Stephen ADAMS, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 90–162C.

United States Court of Federal Claims.

April 27, 2005.

Jules Bernstein and Edgar James, Washington, D.C., for plaintiffs. Linda Lipsett, Washington, D.C., of counsel.

Shalom Brilliant with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

BUSH, Judge.

The court has before it three pending motions for partial summary judgment on "driving time" overtime pay claims: Defendant's Motion for Partial Summary Judgment of August 12, 2002 (Def.'s 2002 Mot.), Plaintiffs' Motion for Partial Summary Judgment Regarding the "Driving Time" Issue of August 2, 2004 (Pls.' 2004 Mot.) and Defendant's Cross–Motion for Partial Summary Judgment of September 22, 2004 (Def.'s 2004 Mot.). In this court's recent opinion deciding another partial summary judgment motion in this case, *Adams v. United States*, No. 90–162C and Consolidated Cases, slip op. at 2 (Fed.Cl. Dec. 1, 2004) (*Adams III*), the court held in abeyance its determination of the 2002 and 2004 driving time motions to permit

the completion of briefing.[1] Although the three motions before the court present different factual and legal issues, the common underlying issue of the compensability or noncompensability of driving time for all of the concerned plaintiffs compels the court to consider all of these driving time claims, and defendant's defenses to them, in one opinion.

## BACKGROUND

This matter has a long history, much of which has been recounted in *Adams v. United States*, 27 Fed.Cl. 5 (1992) (*Adams I*), rev'd and remanded, 178 F.3d 1306, 1998 WL 804552 (Fed.Cir.1998) (Table and Unpublished Opinion) (*Adams II*), and *Adams III*. Only the facts relevant to the motions at hand are related here. Of the many plaintiffs pursuing overtime pay claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (2000) (FLSA), in these consolidated cases, several thousand have settled their overtime pay claims related to a prior classification as FLSA-exempt employees but reserved their right to litigate additional overtime pay claims for time spent driving to and from work in government-issued vehicles. Three groups of plaintiffs, defined most easily by the settlement agreements that encompassed their positions, are before the court on the driving time motions.

Defendant's 2002 motion addressed the driving time claims of two groups of plaintiffs. The first group of plaintiffs were United States Secret Service (USSS) employees, working in "occupational codes 080 and 391[as] non-supervisory GS–9s and 11s, and occupational codes 072 and 1397[as] non-supervisory GS–9s." Def.'s 2002 Mot.App. at 1 (July 9, 1999 Settlement Agreement). The second group of plaintiffs were United States Customs Service (USCS) employees, working in "occupational code 1801, Marine Enforcement Officers, GS–9 through GS–11." Def.'s 2002 Mot.App. at 12 (August 9, 2000 Settlement Agreement). Although the terms of the 1999 and 2000 settlement agreements vary regarding pay and other matters specific to the USSS or USCS plaintiffs, the language reserving the right to pursue driving time claims is identical:

Such back pay does not constitute compensation for time spent driving a government vehicle from home to work and from work to home, and this agreement does not cover or affect any claim plaintiffs may have for additional back pay for such driving time, which shall be litigated in these consolidated cases.

Def.'s 2002 Mot.App. at 3 (July 9, 1999 Agreement ¶ 3.A at 3), App. at 14 (August 9, 2000 Agreement ¶ 3.A at 3 (where the term "Agreement" is capitalized but the text is otherwise as quoted)). Because the pertinent legal terms of the 1999 and 2000 settlement agreements are identical, the claims of the first and second groups of plaintiffs at issue in defendant's 2002 motion raise common legal issues as to the scope of the claims preserved by the settlement agreements and the stipulations of partial dismissal filed with this court related to those agreements.

The third group of plaintiffs, those at issue in the 2004 cross-motions, were employed at the Bureau of Alcohol, Tobacco and Firearms (BATF), USCS, the Drug Enforcement Administration (DEA), Internal Revenue Service–Criminal Investigation Division (IRS–CID) and USSS in occupational series 1811 at grade GS–12, and settled their overtime pay claims related to a prior classification as FLSA-exempt employees on August 29, 2003. Pls.' 2004 Mot. at 1–2. The language preserving driving time claims in the 2003 settlement agreement differs from the 1999 and 2000 agreements in two ways. First, the 2003 settlement agreement states that

Solely for the purposes of litigating the plaintiffs' claims to recover for driving time, it is agreed and stipulated herein that such plaintiffs while employed by the agencies [BATF, IRS–CID, DEA, USCS, and USSS] as GS–12–1811s were FLSA non-exempt.

Bernstein Decl. Ex. 1 (August 29, 2003 Agreement) ¶ 5.M at 8. There was no stipulation as to the non-exempt status of the plaintiffs for prior employment periods in the

---

1. The court also held in abeyance its decision on Defendant's Cross–Motion for Partial Summary Judgment as to Certain Plaintiffs filed on June 26, 2002, which is issued in a separately published opinion of this date.

1999 and 2000 agreements. Second, the description of the preserved driving time claims evolved over time. In the 1999 and 2000 agreements, these claims are referred to as "time spent driving a government vehicle from home to work and from work to home." Def.'s 2002 Mot.App. at 3 (July 9, 1999 Agreement ¶ 3.A at 3), App. at 14 (August 9, 2000 Agreement ¶ 3.A at 3). In the 2003 agreement, the preserved driving time claims are described as "time solely spent driving a government vehicle from home to work and work to home." Bernstein Decl. Ex. 1 (August 29, 2003 Agreement) ¶ 5.M at 8. Because of the differences in the settlement agreement terms preserving the driving time claims by way of stipulations of partial dismissal with this court, the claims of the first two groups of plaintiffs may raise different legal issues than those of the third group of plaintiffs.

The 2002 and 2004 motions have been fully briefed. Oral argument was held on the driving time issue on April 15, 2005. Based on the record before the court and for the reasons set forth herein, defendant's 2002 motion is granted. Plaintiffs' 2004 motion for partial summary judgment on the driving time issue is denied, and defendant's 2004 motion for partial summary judgment on the driving time issue is granted.

## DISCUSSION

### I. Standard of Review

This action is before the court on three motions for partial summary judgment. Defendant's 2002 motion concerns the driving time claims of the first two groups of plaintiffs. The 2004 cross-motions regard the driving time claims of the third group of plaintiffs. When the court considers cross-motions for summary judgment, each motion is evaluated under the same summary judgment standard. *Cubic Def. Sys., Inc. v. United States,* 45 Fed.Cl. 450, 457 (1999).

The availability of summary judgment helps a federal court " 'to secure the just, speedy, and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Summary judgment is appropriate where there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of the Rules of the United States Court of Federal Claims (RCFC); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it would affect the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. The moving party bears the burden of showing that there is an absence of any genuine issue of material fact. *Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir. 1994) (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). All doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987).

However, the non-moving party has the burden of producing sufficient evidence that there is a genuine issue of material fact in dispute which would allow a reasonable finder of fact to rule in its favor. *Anderson v. Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. 2505. Such evidence need not be admissible at trial; nevertheless, mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is not sufficient to preclude summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson v. Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505; *Mingus,* 812 F.2d at 1390–91; *see also Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 835–36 (Fed.Cir.1984) (in making a determination as to whether genuine issues of material fact exist, the court is not to accept a party's bare assertion that a fact is in dispute). "The party opposing the motion must point to an evidentiary conflict created on the record by at least a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant." *Barmag,* 731 F.2d at 836. Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## II. Compensable Driving Time Claims

### A. Statutory and Regulatory Framework

#### 1. FLSA Overtime Pay Requirement

One purpose of the Fair Labor Standards Act of 1938 was to ensure that a covered employee received compensation for all hours worked for the employer:

> The Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only a part of it. Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act.

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602, 64 S.Ct. 698, 88 L.Ed. 949 (1944) (*Tennessee Coal*). "All time spent by an employee performing an activity for the benefit of an agency [of the federal government] and under the control or direction of the agency is 'hours of work.'" 5 C.F.R. § 551.401(a) (2005). In addition, FLSA overtime provisions require time and a half pay for hours worked beyond a weekly maximum hour limit. 29 U.S.C. § 207. Under FLSA, the federal government merely has to permit or suffer a federal employee to work overtime—no specific overtime authorization is needed for the extra hours to be compensable. *Doe v. United States*, 372 F.3d 1347, 1360–61 & nn. 6–7 (Fed.Cir.2004).

#### 2. Early Travel Time Cases

The Supreme Court has interpreted FLSA to require compensation for certain travel activities on the employer's premises, such as travel underground from a mine entrance to the location worked, *Tennessee Coal*, 321 U.S. at 603, 64 S.Ct. 698, or the time needed to walk from a time clock to an actual work station, if more than a *de minimis* number of minutes, in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Because *Anderson* and similar cases expanded employer pay liability for activities such as "opening windows, switching on lights, and walking to ... work stations," Congress acted to reduce employer liability. *Bobo v. United States*, 37 Fed.Cl. 690, 692 n. 3 (1997) (*Bobo I*), *aff'd* 136 F.3d 1465 (Fed.Cir.1998) (*Bobo II*). Congress amended FLSA by enacting the Portal–to–Portal Act of 1947, now codified at 29 U.S.C. §§ 251–62 (2000).

#### 3. Portal–to–Portal Act Provisions and Their Interpretation

The relevant Portal–to–Portal Act provisions are set forth at 29 U.S.C. § 254 and except the following activities from FLSA liability because they are noncompensable:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities....

29 U.S.C. § 254(a)(1)-(2). The Supreme Court had occasion to interpret the extent of these exceptions to compensable activities under FLSA in two cases handed down on January 30, 1956. Neither case dealt with travel time, but these cases, *Steiner v. Mitchell*, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) and *Mitchell v. King Packing Co.*, 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956), provide the standard by which courts may now measure whether an employee's activity at the beginning or end of the workday is noncompensable because of the Portal–to–Portal Act.

In *Steiner*, the Supreme Court found that workers in a battery plant that used caustic and toxic materials were compelled by health, hygiene and safety considerations and encouraged by state law to change their clothes immediately before and after work, and to shower in the employer's facilities. 350 U.S. at 249–51, 76 S.Ct. 330. Because these activities were "an integral and indispensable part of the [employee's] principal

activities ... and are not specifically excluded by Section 4(a)(1) [now codified at 29 U.S.C. § 254(a)(1) ]," the Supreme Court determined that the time spent changing clothes and showering was compensable and did not fit into any Portal–to–Portal Act exception. *Id.* at 256, 76 S.Ct. 330. In *King Packing,* the Supreme Court found that meat-cutters who held positions as "knifemen" in a meat-packing plant were required to keep their knives razor-sharp as a condition of their employment. 350 U.S. at 262, 76 S.Ct. 337. The time the meat-cutters spent sharpening these knives before or after shifts or during lunch breaks was found by the Court to be compensable under FLSA, because this activity was "an integral part of and indispensable to the various butchering activities for which they were principally employed." *Id.* at 263, 76 S.Ct. 337. Thus, even activities which are preliminary or postliminary to a work-shift may be compensable if these activities are integral and indispensable to the employee's principal work activities.

### 4. *De Minimis* Rule

■ Even if a preliminary or postliminary activity would be compensable under the *Steiner* "integral and indispensable" standard, inconsequential daily amounts of time in this compensable category of activities will not create FLSA liability. *Bobo II,* 136 F.3d at 1468 (citing *Anderson,* 328 U.S. at 692, 66 S.Ct. 1187). The *de minimis* rule limiting FLSA liability for preliminary or postliminary employee activity was stated in *Anderson:*

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

328 U.S. at 692, 66 S.Ct. 1187. The Federal Circuit has adopted a three-factor analysis from *Lindow v. United States,* 738 F.2d 1057, 1063 (9th Cir.1984), for the proper applica-

tion of the *de minimis* rule to FLSA claims: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Bobo II,* 136 F.3d at 1468.

### 5. Custom or Practice of Compensability

A limitation on the Portal–to–Portal Act exception of preliminary and postliminary activities from FLSA-compensable work is found in section 254(b):

> (b) Compensability by contract or custom
>
> Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to any activity, the employer shall not be so relieved if such activity is compensable by either—
>
> (1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or
>
> (2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

29 U.S.C. § 254(b). The application of section 254(b) to federal employees is little discussed in cases before this court or its predecessors. The Federal Labor Relations Authority (FLRA) read section 254(b)(1) to support an arbitrator's award which had interpreted a collective bargaining clause to require longer temporary duty commutes to be compensated for the amount of time they exceeded the IRS employee's normal commute. *United States Dep't of the Treasury Internal Revenue Serv. v. Nat'l Treasury Employees Union,* 57 F.L.R.A. 444, 2001 WL 950798 (2001) (*Treasury I*). The FLRA also read section 254(b)(2) to support an arbitrator's award which found that the Navy's then existing custom of allowing wharfbuilders to commute to job sites from the Navy

compound during their paid shifts, as opposed to a newer practice of requiring these employees to take a ferry to a job site on their own, unpaid time, created a duty for the Navy to pay overtime for those ferry commutes. *United States Dep't of the Navy Public Works Ctr. Pearl Harbor, Haw. v. Int'l Ass'n of Machinists Haw. Fed. Lodge 1998*, 55 F.L.R.A. 487, 1999 WL 362325 (1999) (*Navy*).

The United States Court of Appeals for the District of Columbia Circuit has also discussed section 254(b) in the context of federal employees, at least tangentially, with an interesting result. *United States Dep't of the Air Force v. Fed. Labor Relations Auth.*, 952 F.2d 446 (1991) (*USAF*). The Circuit Court in *USAF* considered whether the Office of Personnel Management (OPM) regulation characterizing preliminary and postliminary activities not closely related to a federal employee's principal work activity as non-compensable, 5 C.F.R. § 551.412(b), permitted negotiation for compensation for these activities through the collective bargaining process. *Id.* at 450–52. The Circuit Court decided, over a vigorous dissent, that the regulation prohibited such negotiated compensation, and overruled the underlying FLRA decision. *Id.* at 451. *USAF* could be read to eliminate the availability of section 254(b)(1) employer-employee agreements permitting compensation for non-integral preliminary or postliminary activities for federal employees, at least in the District of Columbia Circuit. It should be noted that the Circuit Court declined to reach the issue of whether the OPM regulation was in conflict with section 254(b), and suggested that "any challenge to the legality of the OPM regulation under [section 254(b)] must be brought in an appropriate forum." *Id.* at 453.

The United States Claims Court entertained a FLSA overtime pay claim for federal employees based largely on a "custom or practice" justification pursuant to section 254(b). *Graham v. United States*, 3 Cl.Ct. 791 (1983). Because the facts did not support either an express agreement or a custom or practice of compensating the activities at issue, however, the court found section 254(b) to "not have any applicability to the present case." *Id.* at 795. In *Graham*, the Claims Court did not comment on the applicability of section 254(b) to the claims of federal employees as a general matter, or if there were special considerations in its application because of the nature of federal employment.

The most recent FLRA decision the court has found regarding the applicability of section 254(b) to federal employees reviewed the holdings of *USAF, Navy* and *Treasury I*. *Nat'l Treasury Employees Union v. United States Dep't of the Treasury Internal Revenue Serv. Washington, D.C.*, 59 F.L.R.A. 119, 2003 WL 22142504 (2003) (*Treasury II*). Applying *USAF*, and noting that *Navy* and *Treasury I* did not consider arguments concerning a governing OPM travel regulation, 5 C.F.R. § 551.422(b), the FLRA found that section 551.422(b) prohibited the negotiation of compensation for longer commuting time endured as a result of a temporary duty assignment within the boundaries of the employee's official duty station. *Treasury II*, 59 F.L.R.A. 119. This holding produced the opposite result of the decision accorded the same union in *Treasury I*. The decision in *Treasury II* turned on this language in section 551.422(b):

> (b) An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal "home to work" travel; such travel is not hours of work....

5 C.F.R § 551.422(b) (2005). Noting that negotiations for compensation prohibited by government-wide regulation cannot be allowed, the FLRA denied the union's request to negotiate a proposed commuting time compensation provision for temporary duty assignments. *Treasury II*, 59 F.L.R.A. 119. The FLRA noted that it had no jurisdiction to review the legality of section 551.422(b) in relation to the provisions of the Portal–to–Portal Act. *Id.* The decision does call into question the validity of employment agreements of federal employees that allow for compensation of commuting time, compensation which is nevertheless prohibited by sec-

tion 551.422(b).[2]

In sum, the court is unaware of any binding precedent as to how the section 254(b) limitations on the Portal-to Portal Act's exceptions to FLSA compensability of activities at the beginning or end of a workday or commuting time apply to federal employees. The court notes that the limitations of the exception could lead to a curious result in the federal employment sector. Consider the hypothetical situation of a federal agency "custom or practice" which at a certain point in time interpreted FLSA to afford compensation for a non-integral preliminary or postliminary activity, or a type of commuting. Then, some time later, this interpretation is discovered to have been incorrect as a general rule, and controlling authority bans this court from awarding compensation for those activities. Would section 254(b)(2) and its definition of compensability, triggered because of an incorrect statutory interpretation by the federal employing agency, then trump the controlling legal authority that later pronounced such activities noncompensable? That would appear to be one interpretation of the statutory language, if indeed section 254(b) functions in the federal employment sector exactly as it does in the private sector. The court notes that this might lead to widely disparate compensation practices between different federal agencies, based merely upon a historical mistake in statutory interpretation at some of the agencies, and those mistakes could perpetuate those inequities for years. It could not have been the intent of Congress to replace federal employee compensation rights, as determined by specific authorizing statutes and regulations, with the quirks of incorrect managerial practices within federal agencies.

Because of these concerns, and because of the differences between federal employment, where compensation is governed largely by statute, and private employment, where compensation is governed primarily by contract,

see *Adams v. United States*, 391 F.3d 1212, 1221 (Fed.Cir.2004) (" 'Though a distinction between appointment and contract may sound dissonant in a regime accustomed to the principle that the employment relationship has its ultimate basis in contract, the distinction nevertheless prevails in government service.' " (citing *Kizas v. Webster*, 707 F.2d 524, 535 (D.C.Cir.1983))), *petition for cert. filed*, 73 U.S.L.W. 3558 (U.S. Mar. 9, 2005) (No. 04–1225), the court will examine any application of section 254(b) to the facts of this case to ensure that the agreements, customs or practices alleged to exist squarely fall within the ambit of section 254(b) as it applies to federal employees.

### 6. Employee Commuting Flexibility Act of 1996 (ECFA)

■ ECFA amended the Portal–to–Portal Act by adding the following language to 29 U.S.C. § 254(a):

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (2000). As the Tenth Circuit explained the purpose of this amendment, "[t]he Portal–to–Portal Act was subsequently amended by the Employee Commuting Flexibility Act of 1996 to clarify that otherwise non-compensable commuting to work is not compensable merely because the employee uses his employer's vehicle." *United Transp. Union Local 1745 v. City of*

---

**2.** The rationale in *USAF* relied upon in *Treasury II* is that the federal government cannot negotiate employment agreements in conflict with government-wide regulations, pursuant to 5 U.S.C. § 7117 (2000). *See USAF*, 952 F.2d at 451 ("If the OPM had meant for postliminary activity to be compensable through negotiation under the FLSA, it would have had to affirmatively grant

that right in these or other regulations in order not to run afoul of § 7117 of the F[ederal] S[ervice] L[abor] M[anagement] R[elations] S[tatute] and its designation as nonnegotiable any proposal inconsistent with government-wide regulations such as the provisions under the FEPA or the FLSA barring such compensation.").

*Albuquerque,* 178 F.3d 1109, 1117 (10th Cir. 1999). This provision was placed in the non-compensability subsection of the Portal–to–Portal Act provisions, titled "Activities not compensable." 29 U.S.C. § 254(a). There is no provision in the compensability section of the Portal–to–Portal Act, 29 U.S.C. § 254(b), regarding the use of an employer's vehicle for commuting purposes. Thus, ECFA states that the use of an employer's vehicle for commuting is "not considered part of the employee's principal activities" under certain conditions, yet makes no statement as to when commuting time in employer-provided vehicles would be part of an employee's principal activities and compensable.

The word "agreement" is not defined in the statutory language of ECFA itself. Indeed, Congress rejected an amendment which would have required the agreement between employer and employee to be "knowing and voluntary, and [not imposed] as a condition of employment." H.R.Rep. No. 104–585, at 11 (1996) (Minority Views). Because the term "agreement" is subject to multiple interpretations, this court looks to the legislative history to define this term. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear."); *Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1252 (Fed.Cir.2000) ("When the language of a statute fails to provide clear and unambiguous direction, we may turn to the statute's legislative history." (citing *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991))).

The agreement regarding the use of the employer's vehicle for commuting need not be in writing, and may be based on no more than a mutual understanding of company practices. H.R.Rep. No. 104–585, at 4 (1996) (Committee Statement and Views) ("While H.R. 1227 [ (the ECFA bill) ] does not require a written agreement, this requirement may be satisfied through a formal written agreement between the employee and employer, a collective bargaining agreement between the employee's representative and the employer, or an understanding based on established industry or company practices."). At least one purpose of the agreement, from the employer's standpoint, is to define the commuting time as uncompensated. *Id.* at 11 (Minority Views) ("The Majority chose to leave H.R. 1227 weak on the issue of employee voluntariness, preferring to grant employers wide latitude to impose, as a condition of employment, non-voluntary and non-compensable employee use of the employer's vehicle.").

It is clear that the primary purpose of ECFA was to limit employer liability for FLSA claims related to commuting time in employer-provided vehicles. *See id.* at 3 (Background) (noting that ECFA would address a situation where employers were "vulnerable to back pay lawsuits by both the Department of Labor and employees"), at 8–9 (Budget Authority and Congressional Budget Office Cost Estimate) ("If, under current law, the courts determine that the time spent commuting in a company vehicle and on incidental activities is subject to compensation, state and local governments would face additional costs. H.R. 1227 [ (ECFA) ] would eliminate this potential liability."). It would be incongruous at best to read the statute, an amendment ensuring noncompensability under FLSA as long as minimal conditions are met, as *mandating* compensability for employee commutes in employer-provided vehicles if no agreement is alleged to exist between the employer and the employee regarding the noncompensability of those commutes. Yet this is precisely the argument that plaintiffs make here. *See* Pls.' 2004 Mot. at 20 (noting that defendant has not alleged the existence of an employer-employee agreement concerning the noncompensability of commuting time and concluding that "ECFA affirmatively supports plaintiffs' entitlement to be paid for driving a government vehicle between home and work").

This negative inference from the statutory language of ECFA cannot stand. As defendant points out, this court in *Bobo I* determined that the evidentiary record in that case did not support the government's allegation of the existence of an employer-employee agreement concerning commuting time

noncompensability. 37 Fed.Cl. at 697. Yet, the court ruled in favor of the government and determined those commutes to be non-compensable. *Id.* at 703. This ruling was affirmed in *Bobo II.* If ECFA mandated compensation where no agreement has been alleged, as plaintiffs contend, the Federal Circuit's decision in *Bobo II* would have been wrongly decided, but this is not so. ECFA does not support plaintiffs' position because, as this court stated in *Bobo I,* "[b]y its own terms, the 1996 amendment [ (ECFA) ] applies only if the use of the employer's vehicle for commuting purposes is subject to an employee-employer agreement that precludes compensation for such commutes." *Id.* at 697. The court has reviewed other court decisions interpreting ECFA and has found no decision that interprets ECFA to mandate compensability in the absence of an employer-employee agreement fixing the noncompensability of commuting time in employer-provided vehicles. The court is not willing to read into ECFA an inference that is not supported by its statutory terms, legislative history, caselaw or logic.

ECFA is "fully retroactive" in effect, *see, e.g., Baker v. GTE North Inc.,* 110 F.3d 28, 29 (7th Cir.1997), and would apply to the facts of this case, as a defense against liability under FLSA, if any employer-employee agreement fixing the noncompensability of commuting time had been alleged. The briefing of defendant's 2002 motion makes no reference, however, to such an agreement. Neither party in the 2004 motion briefing argues that an employer-employee agreement regarding the noncompensability of commuting time applies to the driving time claims at issue in these motions. Because there has been no allegation in any of the motions of such an agreement, ECFA is inapplicable to the summary judgment motions reviewed here.

## B. Driving Time Pay Claims Cases

There has been extensive litigation of driving time pay claims under FLSA for what might be called commuting time claims. The court will focus primarily upon decisions of such claims in the law enforcement arena, as it finds that the particular demands upon law enforcement personnel, such as plaintiffs, present common issues for courts to consider as they apply FLSA to similar facts. Furthermore, where controlling authority has interpreted FLSA on analogous facts, it is not the job of this court to conduct a *de novo* analysis of the relevant statute. *See Crowley v. United States,* 398 F.3d 1329, 1335 (Fed. Cir.2005) ("We reject the [trial] court's initial de novo interpretation of [the statute at issue in that appeal] because the Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court.").

### 1. *Reich*

Of initial interest is the Second Circuit's review of canine unit police officers' rights to compensation for commuting to and from work with their dogs. *Reich v. New York City Transit Auth.,* 45 F.3d 646 (2nd Cir. 1995) (*Reich*). In *Reich,* the officers' principal duty was to patrol the New York City subways in the company of their dogs. *Id.* at 647. One of each officer's job requirements was to transport the dog to and from the officer's home, where the dog was lodged. *Id.* The United States Department of Labor (DOL) claimed that the entire commute was work time, and won below. *Id.* The Second Circuit carefully reviewed the law under FLSA and the Portal–to–Portal Act, including the decisions in *Anderson, Steiner, Mitchell* and *Lindow,* all discussed *supra,* and summed up the standard for reviewing commuting time claims:

> While no clear standards emerge, certain generalizations can be drawn from these authorities. The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable. Commuting and similar activities are generally not compensable. The ability of the employer to maintain records of such time expended is a factor. And, where the compensable preliminary work is truly mini-

mal, it is the policy of the law to disregard it.

*Id.* at 650. The Federal Circuit has adopted the standard elucidated in *Reich* for deciding commuting time claims. *Bobo II,* 136 F.3d at 1468 ("We agree with the interpretation of the Portal–to–Portal Act set forth in *Reich* ....").

Applying that standard, the Second Circuit first determined that "dog-care" work that occurred during the commute was compensable, despite the Portal–to–Portal Act amendments, because "[f]eeding, training, and walking are work and are indispensable to the dogs' well-being and to the employer's use of the dogs in its business." *Reich,* 45 F.3d at 650. Next, the *Reich* court determined that the requirement of not taking public transportation, the burden of having the dog in the car, and the obligation of being ready to perform dog-care work as needed did not transform the remainder of the commuting time into work time. *Id.* at 651. The court held that "the activity of commuting involved neither exertion nor loss of time" and that "during the major part of commuting time no work is required." *Id.* at 651–52.

The final step in the analysis employed by the *Reich* court was to determine whether the compensable work activities that occurred during commuting time were "so negligible as to be *de minimis* and therefore not compensable under the FLSA." *Id.* at 652. Applying the three *Lindow* factors for *de minimis* work, the Second Circuit reviewed the evidence in the record of a three-day bench trial and found the dog-care work to be "insubstantial," not "regularly occurring" and that "[t]he task of recording the time spent in such duties, when they arise, might well exceed the time expended in the performance of the duties." *Id.* at 652–53. The Reich court concluded that for these canine unit police officers, "these episodes of additional compensable work are *de minimis* and, therefore, need not be compensated." *Id.* at 653. The Sixth Circuit, citing *Reich* as "the leading case" for canine police officer commuting claims, upheld a summary judgment against similar plaintiffs, because those "[p]laintiffs ... have not adduced evidence that canine officers spend more than a de minimis amount of time during their commutes engaged in such [dog-care] activities." *Aiken v. City of Memphis, Tenn.,* 190 F.3d 753, 758 (6th Cir.1999).

### 2. *Bobo I*

This court decided cross-motions for summary judgment concerning commuting time claims of Immigration and Naturalization Service (INS) border patrol agent canine handlers in *Bobo I,* 37 Fed.Cl. at 690, 703. To these claims, the court applied the *Reich* standard. *Id.* at 698. As in *Reich,* the court found that some of the activities that the plaintiffs alleged to have occurred during their commutes would be potentially compensable:

> certain activities that plaintiffs claim to perform while commuting—conducting searches; taking care of their canines; responding to sensors and immigration related calls; and rendering assistance to state, local, and other government agencies—would be integral and indispensable to their principal activities.

*Id.*

However, most of the commuting time was noncompensable, because this court, like the *Reich* court, did not find that the burdens and restrictions placed on the plaintiffs during their commutes transformed the commuting time into work time. *Id.* at 699–700. The noncompensable burdens included "listening to and signing on and off their vehicle radios, observing traffic, and looking out for suspicious activity." *Id.* at 699. The *Bobo I* court cited *Agner v. United States,* 8 Cl.Ct. 635, 638 (1985), *aff'd* 795 F.2d 1017 (Fed.Cir. 1986) (Table), for "the proposition that otherwise noncompensable time is not rendered compensable for FLSA purposes because of a requirement that an employee listen and respond to an employer-owned radio." 37 Fed.Cl. at 700. The restrictions that were imposed, "the prohibition against personal use of their government-owned vehicles and the requirement that they wear their uniforms while driving," also did not transform commuting time into work, because these agents "enjoy the benefit of saving money by commuting in government-owned vehicles rather than their personal vehicles" and be-

cause controlling precedent has ruled that "travel to and from work in a government-owned vehicle is not compensable." *Id.* at 699 n. 13.

Finally, completing the *Reich* analysis, this court considered whether the potentially compensable activities alleged to have occurred during the agents' commutes would be more than *de minimis. Id.* at 701–03. Relying on plaintiffs' declarations concerning dog-care duties and responding to immigration-related calls and emergency calls, the court found that

> [t]he activities plaintiffs engage in while driving to and from their sector offices before and after their paid workdays begin and end are de minimis and therefore non-compensable. None of these activities occurred regularly, and, more importantly, when they did occur, they lasted for a short period of time, which is insubstantial in the aggregate. Finally, the INS would be hard-pressed to establish a workable system for recording this time. For these reasons, the duties plaintiffs claim to perform while commuting are *de minimis.*

*Id.* at 703 (footnotes omitted). Because plaintiffs' claims were for work that fell within the *de minimis* standard, the court granted defendant's cross-motion for summary judgment.

### 3. *Bobo II*

*Bobo II* affirmed the judgment in *Bobo I,* "[b]ecause any work performed by the INS Agents during their commutes that was otherwise compensable under the FLSA was *de minimis* in nature." 136 F.3d at 1466. The Federal Circuit noted that "[v]iewing the pleadings and submissions in the light most favorable to the INS Agents, we accept as true that the restrictions placed upon the INS Agents' commutes are compulsory, for the benefit of the INS, and closely related to the INS Agents' principal work activities." *Id.* at 1468. The *Bobo II* court reviewed the restrictions placed on the commuting time period, and found that "the main restriction on the INS Agents is the prohibition on making personal stops during their commute. However, such a restriction on their use of a government vehicle during their commuting

time does not make this time compensable." *Id.* The Federal Circuit also found that the other alleged burdens "d[id] not pass the *de minimis* threshold," because "they are infrequent, of trivial aggregate duration, and administratively impracticable to measure." Summary judgment was justified because the commuting time duties "d[id] not give rise to a valid or even triable claim for compensation under the FLSA." *Id.*

### 4. Other Jurisdictions

The *Reich* analysis of the compensability of commuting time has been widely cited and followed when deciding FLSA claims in the law enforcement context. *See, e.g., Aiken,* 190 F.3d at 758 (citing both *Reich* and *Bobo II* and denying claims because the plaintiffs' evidence showed only *de minimis* work during commutes); *Jerzak v. City of S. Bend,* 996 F.Supp. 840, 848 (N.D.Ind.1998) (citing *Reich* and denying commuting time claims); *Hellmers v. Town of Vestal, N.Y.,* 969 F.Supp. 837, 843 (N.D.N.Y.1997) (citing *Reich* and denying commuting time claims); *Bolick v. Brevard County Sheriff's Dept.,* 937 F.Supp. 1560, 1565–66 (M.D.Fla.1996) (citing *Reich* and denying compensation for commuting time); *see also Bartholomew v. City of Burlington, Kan.,* 5 F.Supp.2d 1161, 1170 (D.Kan.1998) (not citing *Reich* but similarly applying the holdings in *Steiner, Anderson* and *Lindow* to deny claims for commuting time claims); *Kennedy v. State,* 688 N.W.2d 473, 477–78 (Iowa 2004) (not citing *Reich* but citing *Aiken* and *Hellmers* and concluding that "these officers' drive time was no more than a non-compensable commute under the FLSA"). The *Reich* analysis has also been cited and approved in other FLSA cases where the employee is not a law enforcement officer but another type of employee. *See, e.g., Tum v. Barber Foods, Inc.,* 360 F.3d 274, 279, 281 (1st Cir.2004) (citing *Reich* and denying a "walking time" claim for the time it took employees to reach the time clock after donning required protective and hygienic gear); *Dooley v. Liberty Mut. Ins. Co.,* 307 F.Supp.2d 234, 249 (D.Mass.2004) (following *Reich* to determine that "commutes do not constitute a primary activity" unless the workday begins before, or continues after, the driving time of the employees con-

cerned); *see also Smith v. Aztec Well Servicing Co.*, 321 F.Supp.2d 1234, 1237–38 (D.N.M.2004) (not citing *Reich*, but applying the holdings of *Steiner* and *Lindow* to deny commuting claims because only *de minimis* work occurred during the commutes). The overwhelming weight of authority supports the *Reich* analysis of commuting time claims under FLSA.

Plaintiffs cite three cases for the proposition that "FLSA may require an employee to be compensated for his or her integral and indispensable travel time even where no activities other than driving are performed during the travel." Pls.' 2004 Opp. at 16 n. 5. This proposition appears to offer an alternative to the *Reich* analysis of commuting time claims. Plaintiffs' cases, however, are not persuasive.

The first case offered by plaintiffs, *Baker v. Barnard Constr. Co.*, 146 F.3d 1214 (10th Cir.1998), does indeed state that "travel time meeting the 'integral and indispensable' test must be compensated pursuant to the FLSA" and applied this statement of the law to a commuting time claim. *Id.* at 1216. However, the facts of that case can be readily distinguished from the claims here. In *Baker*, the commute occurred in private vehicles provided by the employees, who were required to transport fully fueled and stocked welding rigs. *Id.* at 1215. The employer "did not pay [the] Plaintiffs for their return travel time associated with refueling and restocking the welding rigs in the evenings." *Id.* Unlike *Reich* and the case here, the commute in *Baker* was not in a law enforcement context. In addition, the burdens upon the commute were considerable, and far exceeded the burdens discussed in *Reich* or *Bobo II. Cf. Dooley*, 307 F.Supp.2d at 248 (distinguishing *Baker* from *Dooley* because in *Baker*, "the act of driving equipment itself constituted substantial work, either because of additional responsibilities or the extensive nature of the equipment being transported"). Because the type of commuting in *Baker* was of a different nature than the commuting

here and in *Reich*, *Baker* must be distinguished as not readily applicable to the facts at hand. To the extent that the Tenth Circuit in *Baker* could be read to apply a more easily met standard for compensable travel time under FLSA than that applied by the Second Circuit in *Reich*,[3] a reading the court does not endorse, the court recognizes that the Federal Circuit has adopted the *Reich* analysis and that the *Reich* analysis is controlling law in this circuit.

The second case cited by plaintiffs is an unreported decision, *Steelman v. Telco Tel. Co.*, No. CIV. 00–518–JO, 2001 WL 21361 (D.Or. Jan.5, 2001). *Steelman* cited *Reich*, however, and endorsed the *Reich* analysis of commuting time claims. *Id.* at *3. *Steelman* thus supports defendant's position here, not plaintiffs'. Denying cross-motions for summary judgment on the FLSA claims before it, *Steelman* held only that disputed facts postponed the application of the *Reich* analysis. *Id. Steelman* thus provides no support for plaintiffs' alternative to the *Reich* analysis.

Plaintiffs' third case is *Graham v. City of Chicago*, 828 F.Supp. 576 (N.D.Ill.1993). This is an early case in a series of decisions discussing commuting time claims for canine unit officers. *Id.* at 579 ("Though several courts have addressed the issue of home care for police canines, the issue of whether transporting the animals to and from work is compensable has not been squarely addressed."). The *Graham* court, unlike *Reich*, treated the entire commute time as compensable because the officers were transporting the dogs to and from work, even though no additional burden or work occurred during the driving time. *Id.* Although there are minor factual differences between *Graham* and *Reich*, these decisions cannot be reconciled. The *Reich* court noted that the lower court decision on appeal in *Reich* had followed *Graham* in ruling commuting time compensable, *Reich*, 45 F.3d at 648, and reversed the lower court's ruling in favor of the

---

**3.** Even where *Baker* is the controlling law, an analysis similar to the *Reich* analysis has been applied to commuting time claims for time spent commuting in an employer-provided vehicle where the burdens alleged were minimal in comparison with the benefits of convenient and free transportation to and from the work site. *Smith*, 321 F.Supp.2d at 1237. As in *Reich*, the commuting time in *Smith* was ruled to be noncompensable. *Id.*

appellees' claim for compensation, *id.* at 653. Because the Federal Circuit in *Bobo II* endorsed *Reich,* the *Reich* analysis of commuting time compensability under FLSA, not the *Graham* analysis, governs this court. The *Graham* analysis appears to be an interpretation of the Portal–to–Portal Act which is in a distinct minority and is probably no longer good law. *See Dooley,* 307 F.Supp.2d at 248 ("*Graham* remains, but it is contradicted by extensive case law reaching the opposite conclusion.").

Plaintiffs have failed to persuade the court that the *Reich* analysis adopted by *Bobo II* is incorrect. Controlling and persuasive authority argue otherwise. The court now applies the *Reich* analysis and the holding of *Bobo II* to plaintiffs' claims now before the court on motions for summary judgment.

### III. Defendant's 2002 Motion

#### A. Arguments of the Parties

■ Defendant's 2002 motion relies heavily on the holdings of *Bobo I* and *Bobo II,* and distills from them that

> [t]he premise underlying both opinions was that the mere act of driving a vehicle to and from the workplace did not itself constitute work, and that time spent in this activity would not be compensable unless it involved some additional burdens that were more than *de minimis.*

Def.'s 2002 Mot. at 5–6. This is indeed the controlling law in this circuit, and this premise must be applied to the facts of this case. Plaintiffs' 2002 motion attempts to distinguish *Bobo II* from the instant case, because, plaintiffs assert, "in *Bobo [II]* there had never been a 'custom or practice' of paying INS canine handlers for driving." Pls.' 2002 Opp. at 10.

Plaintiffs assert that here, unlike in *Bobo II,* "a 'custom' or 'practice' was in effect at the time such driving was being performed providing for payment by the Government for such activity." *Id.* at 14. Plaintiffs, however, mistake the conditions imposed by the statute for the "custom or practice" limitation on the Portal–to–Portal Act provisions. For plaintiffs' argument to have any force here, plaintiffs must show that there was a "custom or practice" of paying *these plaintiffs* for their commutes. The statute clearly states that for an employee to benefit from the custom or practice limitation on the Portal–to–Portal Act provisions mandating the noncompensability of commuting time, there must be "a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between *such* employee, his agent, or collective-bargaining representative and his employer." 29 U.S.C. § 254(b)(2) (emphasis added). Here, plaintiffs toil to show that other employees were paid for commuting time in government vehicles, but fail to allege that these plaintiffs, or indeed any employees in the same grade levels and position descriptions as these plaintiffs, benefitted from such a custom or practice. Thus, plaintiffs' attempt to distinguish this case from *Bobo II* fails because there is no genuine issue of material fact regarding a custom or practice concerning these particular plaintiffs.

Defendant argues that federal "agency compliance with the interpretation of FLSA embodied in FPM Letter No. 551–10 ... does not constitute a 'custom or practice' within the meaning of section 254(b)." Def.'s 2002 Reply at 17. This argument echoes the court's concern, as discussed *supra,* that section 254(b) may not be applicable to federal employees, or that special considerations might affect its applicability to federal employees. It is not necessary to reach this issue, however, because the court has found that no custom or practice existed here for compensating the 2002 plaintiffs for their commutes.

The court now turns to the facts of the commutes of the first two groups of plaintiffs, to determine if *Bobo II* can be distinguished or if that holding controls the result here. The court notes that defendant's reliance on *Bobo II* and defendant's assertion that the first two groups of plaintiffs' commuting time involved "even less than *de minimis* " work activity, Def.'s 2002 Mot. at 7, put plaintiffs on notice that the *Reich* analysis and the *de minimis* doctrine would be at

issue in this case. To avoid the summary judgment fate of the plaintiffs in *Bobo I,* plaintiffs here must allege facts that would satisfy all of the elements of the *Reich* analysis, so as to show that the driving time by and of itself was inherently compensable, or that plaintiffs' commuting time included more than *de minimis* work activity.

### B. Plaintiffs at USSS and USCS at Issue in the 2002 Motion

Defendant asserts that the plaintiffs encompassed by defendant's 2002 motion occupy the following types of positions: marine enforcement officer positions at USCS; and, physical security specialist, telecommunication specialist, fingerprint specialist or document analyst positions at USSS. This assertion is uncontroverted. These job classifications fall within the law enforcement personnel category reviewed in *Reich* and *Bobo I.* The only type of claim addressed in defendant's 2002 motion is commuting time claims while driving a government vehicle to and from work, as substantiated by the settlement agreements concerning these plaintiffs. This is the type of claim addressed in *Bobo I* and *Bobo II.* Despite plaintiffs' contention that defendant "has submitted no facts, material or otherwise, in support of its motion," Pls.' 2002 Opp. at 2, the court finds that defendant has identified the plaintiffs, claims, and controlling law concerning those claims to a degree sufficient to decide defendant's 2002 motion as a matter of law.

In opposition to defendant's 2002 motion, plaintiffs have submitted Plaintiffs' Statement of Uncontroverted Fact (Pls.' 2002 Facts) and an appendix of exhibits (Pls.' 2002 App.), both of which are almost exclusively devoted to agency policies and procedures concerning the compensation of commuting time, or agency commentary on the FLSA implications of that compensation. There are over three hundred pages in the appendix. Several of the exhibits are internal documents from other federal agencies, not USSS or USCS. No declarations have been submitted from individual plaintiffs whose claims are at issue in the 2002 motion. The lack of specificity of the alleged facts significantly detracts from plaintiffs' ability to support their contentions under the *Reich* standard.

Plaintiffs appear to argue that these plaintiffs' driving time claims are based on situations where the " ' "employee[ ] drives a government vehicle home (as a requirement of the employing agency) to respond to emergency calls from his/her home." ' " Pls.' 2002 Opp. at 9 (quoting *Aguilar v. United States,* 36 Fed.Cl. 560, 567 (1996) (quoting FPM Letter No. 551–10 (1976))). However, nothing in plaintiffs' recitation of facts alleges that this was indeed the situation at USSS and USCS for the concerned plaintiffs.[4] Assuming, *arguendo,*[5] that the court should infer that the only reasons these plaintiffs at USSS and USCS were issued government vehicles was to have the vehicles readily available for emergency response to agency needs, a fact not alleged by plaintiffs with the specificity necessary to resist summary judgment,[6] the court would follow *Bobo II* and review these commutes for compensability

---

**4.** A USSS document is quoted which states that certain USSS GS–5 and GS–7 employees may claim work time for when they "drive a Government vehicle to and from work as a requirement of the Secret Service in order to respond to emergencies from their residence," but this policy does not allege any facts relevant here. Pls.' 2002 Facts at 3. Similarly, a USCS memo is quoted which states that "[i]n the past, we have authorized certain groups of employees to use G[overnment] O[wned] V[ehicle]s Home to Work in order for them to be available for call outs and to facilitate before and after duty hours activities," *id.* at 10, but again, this statement alleges no facts that are of use to plaintiffs concerning these plaintiffs in particular.

**5.** Defendant also appears to make this inference in order to compare plaintiffs' driving time claims with the claims considered in *Bobo II. See* Def.'s 2002 Reply at 9 ("Where an employee drives a Government vehicle home in order to have the vehicle available in the event of an emergency, the employee's utilization of a Government vehicle for his commute apparently serves the Government's interest.").

**6.** Plaintiffs simply state in their brief that these plaintiffs' "driving is compensable under FLSA," Pls.' 2002 Opp. at 8, and offer citations to OPM guidance and regulations. Plaintiffs do not support this legal conclusion with factual assertions related to the conditions under which they commuted in government vehicles.

based on the burdens placed on plaintiffs related to emergency response availability, and for compensability based upon any work activities they might have performed during their commutes. If emergency response activities during commuting had been alleged, the court would regard any emergency response activities alleged to have occurred during the commutes as integral and indispensable to plaintiffs' primary work activities, because all favorable inferences are due to the non-movant opposing summary judgment. These emergency response work activities would be compensable if not *de minimis*.

In the 2002 motion evidentiary allegations by plaintiffs, there is no evidence of restrictions or burdens on these plaintiffs during their commutes, such as prohibitions on personal stops or a requirement to monitor radio communications. The only burden alleged by plaintiffs, a burden alleged only indirectly through citation to FPM Letter No. 551–10, is that these plaintiffs were required to take government vehicles home to facilitate emergency response from their homes. The *Reich* analysis endorsed by *Bobo II* compels the determination that such minimally-burdened commuting time is noncompensable. Pursuant to the holding of *Bobo II*, the driving time of these plaintiffs is noncompensable because it is not work time.

Plaintiffs do not claim back pay for emergency response activity during their commutes.[7] Even if plaintiffs had presented such a claim, the record is devoid of any facts concerning the regularity, aggregate duration, or time-keeping burden related to any emergency response activities performed by these plaintiffs during their commutes. In the absence of any alleged facts as to compensable work activity occurring during these commutes, plaintiffs have not shown that any work during these commutes was more than *de minimis*. *Bobo I* rejected

driving time claims because the facts alleged did not overcome the *de minimis* threshold, and the Federal Circuit affirmed that decision and held that no valid or triable claim remained because the plaintiffs' work had not been shown to be more than *de minimis*. This comports with plaintiffs' burden under FLSA to prove that compensable work was performed. *See Anderson*, 328 U.S. at 686–87, 66 S.Ct. 1187 ("An employee who brings suit under § 16(b) of [FLSA] for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated.").

Plaintiffs have not adduced facts alleging burdens on their commuting time in government vehicles which would render those commutes compensable. In addition, plaintiffs have not adduced facts alleging that compensable work activities occurred during that commuting time. Thus, plaintiffs' back pay driving time claims preserved by the 1999 and 2000 settlement agreements fail as a matter of law. For these reasons, defendant's 2002 motion is granted.

## IV. 2004 Cross–Motions

### A. Changes in Settlement Agreement Terms

As an initial matter, the court must address whether the changes in the settlement agreement terms from the 1999 and 2000 agreements to the 2003 agreement make a difference in how the *Reich* analysis must be applied to the 2004 motions as opposed to the 2002 motion. Plaintiffs rely on the new joint stipulation that states that plaintiffs concerned by the 2004 motions were FLSA nonexempt at the times relevant to the driving time issue. Pls.' 2004 Mot. at 3. However, as defendant points out, this does not help plaintiffs to show that there was a custom or practice of compensating these plaintiffs for

---

7. The court asked plaintiffs "[w]hether plaintiffs allege that more than *de minimis* emergency response work occurred during the driving time at issue, and if so, which citations to the record before the court support such an allegation." Order of April 4, 2005 at 2. At oral argument, plaintiffs responded that emergency response work during driving time was not the basis of

their driving time claims. *See* Tr. at 29 (Pls.' counsel) ("[W]e're not talking about the time that they may have been riding home and they got a call to go some place on an emergency or otherwise . . . ."). For further discussion of the scope of plaintiffs' driving time claims, *see infra* note 9 and accompanying text.

their commuting time, because "the undisputed fact is that, to the extent that agencies ever followed a practice of compensating agents for home-to-work driving in accordance with FPM Letter No. 551–10, this practice never extended to agents who were, rightly or wrongly, *classified* as exempt from the FLSA [at the time]." Def.'s 2004 Mot. at 33. Thus, the new language in the 2003 settlement agreement is of no avail to plaintiffs in establishing a custom or practice of any relevance to the 2004 motions and does not change the court's analysis.[8]

Defendant relies on the new language in the 2003 settlement agreement preserving claims " 'based upon time *solely* spent driving to and from work in a government vehicle.' " Def.'s 2004 Mot. at 9 (quoting agreement and putting emphasis on the added word "solely"). In defendant's view, "to the extent that plaintiffs spent time during their commutes performing activities beyond solely driving, those activities do not require additional back pay for that time, but [the settlement agreement terms] preclude [such overtime claims], regardless of whether those activities constituted compensable work and regardless of whether that work was more than *de minimis*. The compensability of time spent by plaintiffs performing these activities is simply not before the [c]ourt." *Id.* Plaintiffs did not respond to this argument in their responsive briefing.

Plaintiffs were invited to respond to this topic at oral argument. Order of April 4, 2005 at 2. At oral argument, plaintiffs agreed with defendant's explanation of the significance of the word "solely." *See* Tr. at 29 (Pls.' counsel) ("[W]e're not talking about the time that they may have been riding home and they got a call to go some place on an emergency or otherwise, we're talking about the driving from home-to-work and from work-to-home so they could have the cars at home to be able to respond to emergencies."). Based on the parties' arguments and the plain meaning of the text of the 2003 settlement agreement, the court agrees that plaintiffs' preserved claims are for driving time which consists solely of transporting the employee, automobile and work-related equipment from home to work and work to home.[9]

## B. Plaintiffs' Argument that *Bobo II* is Distinguishable or Mistaken

Plaintiffs argue that *Bobo II* is distinguishable on both "facts and legal principles." Pls.' 2004 Mot. at 15. The facts that are alleged to be different are: (1) that FPM Letter No. 551–10 is applicable here and was not in *Bobo II*, *id.* at 16; (2) that plaintiffs here were commuting in government vehicles to allow for immediate response to emergencies, rather than to transport dogs, *id.*; (3) that the *Bobo II* plaintiffs received some compensation for driving time and dog-care, whereas these plaintiffs did not receive any compensation for commuting time activities, *id.*; (4) that here the claim is not for trivial, *de minimis* dog-care work such as was the case in *Bobo II*, *id.* at 16–17; and, (5) that a custom or practice existed here of compensating this type of commuting time for other employees, *id.* at 17. Plaintiffs in their reply brief allege an additional factual distinction (6), that a statute, 31 U.S.C. § 1344(a)(2)(B), is relevant to this case but was not addressed in *Bobo II*. Pls.' 2004 Opp. at 23.

The court is unable to discern from plaintiffs' brief exactly which legal principles are different here than in *Bobo II*, but will assume that plaintiffs mean that the allegedly

---

8. As previously discussed in part III.A of this opinion, on these facts the court need not reach the issue of the applicability of section 254(b) to federal employees.

9. Defendant's counsel explained that the addition of the word "solely" to the 2003 stipulation was simply to clarify the limited nature of plaintiffs' preserved claims, and that the 1999 and 2000 stipulations were similarly limited in nature. *See* Tr. at 77 ("I don't think it [the addition of the word "solely"] was intended really to change anything but really to clearly [say] what I believe was intended in all the agreements ...."). De-

fendant's counsel also stated that any work during commuting time, such as emergency response activity documented as "administratively uncontrollable overtime," had already been paid through settlement. *Id.* at 78. The preserved claims are thus for the commuting time in and of itself. *See id.* (Def.'s counsel) ("All these work-related activities other than driving, that's what we settled. What was left over was the routine commute.") *Id.* Plaintiffs did not challenge this interpretation of the scope of plaintiffs' driving time claims.

different facts in this case would permit a different legal analysis than the *Reich* analysis employed in *Bobo II*. This possibility is discussed in more detail *infra* in part IV.C of this opinion. Plaintiffs also suggest that if *Bobo II* could be read to preclude the claims here, that *Bobo II* "would be mistaken." *Id.* at 16 n. 5. This court is, of course, bound by the holding in *Bobo II* and cannot consider plaintiffs' suggestion that the Federal Circuit could be mistaken about the law.

### 1. FPM Letter No. 551–10 at Issue Here but not in *Bobo II*

The relevance of FPM Letter No. 551–10 (FPM Letter) to plaintiffs here is undisputed. Pls.' 2004 Mot. at 4; Def.'s 2004 Reply at 4. This letter, discussed in detail *infra* in part IV.C of this opinion, states that when an "[e]mployee drives a Government vehicle home (as a requirement of the employing agency) to respond to emergency calls immediately from his/her home[,] . . . [a]ll time spent driving the vehicle home to work (work to home) is hours worked." Pls.' 2004 App. Ex. 11 at 547. The opinions in *Bobo I* and *Bobo II* did not discuss FPM Letter No. 551–10. Nevertheless, contrary to plaintiffs' assertion at oral argument, Tr. at 82 (plaintiffs' counsel arguing that "the Federal Circuit did not have before it [FPM Letter No.] 551–10"), the *Bobo* plaintiffs did raise the FPM Letter as support for their commuting time claims.

The trial court in *Bobo I* was presented with arguments concerning the FPM Letter No. 551–10 provision cited above, the provision which authorized compensation for commuting time when a government vehicle was provided in order to facilitate emergency response from the employee's home. Reply Brief for Pls. filed Dec. 31, 1996 at 6, *Bobo I;* Brief for Pls. filed on Sept. 6, 1996 at 7, *Bobo I.* The trial court also had before it the text of FPM Letter No. 551–10, attached as an exhibit to plaintiffs' appendix in support of their cross-motion for summary judgment. Brief for Pls. filed on Sept. 6, 1996 App. at 125, *Bobo I.* In its published opinion, the *Bobo I* court discussed the claims of those plaintiffs for time spent responding to emergency calls from their homes. 37 Fed.Cl. at 703 n. 23. Thus, although it was never specifically discussed by the court, FPM Letter No. 551–10 and its implications were considered by the court in *Bobo I.* On appeal, the border patrol agents also argued for compensability based on emergency response availability and provided a copy of FPM Letter No. 551–10 in their appendix. Brief for Appellants filed Aug. 25, 1997 at 8, 17, App. at 57, *Bobo II* (1997 WL 33544216).

Even though the relevant provision of FPM Letter No. 551–10 concerning compensation for commutes related to emergency response availability was considered in *Bobo I* and was before the Federal Circuit in *Bobo II,* plaintiffs are correct in asserting that there is a "variance" between *Bobo II* and this case in the importance of FPM Letter No. 551–10. Pls.' 2004 Mot. at 15. In *Bobo II,* the government "provided . . . specially equipped vehicles to transport the dogs between their homes and Border Patrol offices or other work locations." 136 F.3d at 1467. Here, plaintiffs allege that the "principal reason that the GS–12 plaintiff criminal investigators . . . were required to drive their government cars between home and work was so that they could 'respond to emergency calls immediately from . . . home.'" Pls.' 2004 Mot. at 16 (quoting FPM Letter No. 551–10). While the plaintiffs in *Bobo II* had emergency-response-from-home claims, these were not the primary claims considered by the Federal Circuit, and were not even mentioned in the appellate decision. At the trial level, the emergency response claims merited only a portion of a footnote. *Bobo I,* 37 Fed.Cl. at 703 n. 23. From this record, it is clear that in *Bobo II,* the government vehicles were primarily for the transportation of dogs and not primarily to obtain emergency response availability from employees' homes.

Here, FPM Letter No. 551–10 is central to plaintiffs' argument of compensability, because emergency response availability is alleged to be the primary reason for their commuting in government vehicles. Defendant implicitly acknowledges the importance and relevance of the FPM Letter to plaintiffs' case here, as contrasted with its minor importance in *Bobo II:*

[A]part from plaintiffs' arguments based upon FPM Letter No. 551–10, plaintiffs make no arguments here that could not as readily be made with respect to the driving performed by the INS agents in *Bobo [II]*.

Def's 2004 Reply at 4. For this reason, the court must examine whether the importance of FPM Letter No. 551–10 in this case makes *Bobo II* distinguishable, as plaintiffs assert, Pls.' 2004 Mot. at 15–16, or whether the statutory interpretation in FPM Letter No. 551–10 is "at odds" with *Bobo II*, as defendant asserts, Def.'s 2004 Reply at 4. This issue is discussed *infra* in part IV.C of this opinion.

### 2. Vehicles for Emergency Response, Not Dog Transportation

Plaintiffs point out that there are factual differences between the commutes of the border patrol agents in *Bobo II* and the commutes of plaintiffs here, because plaintiffs were not transporting dogs; instead, they were issued vehicles " 'to respond to emergency calls immediately from . . . home.' " Pls.' 2004 Mot. at 16 (quoting FPM Letter No. 551–10). This factual distinction is not material to the analysis of compensability of commuting time claims, however. The same *Reich* analysis applies to each commuting time pay claim, despite factual differences, to determine whether or not the employee is working for the employer during the commute. *See Bobo I*, 37 Fed.Cl. at 695 n. 7 (noting that normal commuting time is noncompensable under the Portal–to–Portal Act, but because "employee commutes entailing substantial work differ from normal commutes," stating that the Portal–to–Portal Act exception to compensability "is inapplicable to commutes during which employees perform work for their employers").

If the "work" during commuting time meets the *Reich* standard, the time spent on that work is compensable if not *de minimis*. This court must apply the *Reich* analysis to fact scenarios that do not perfectly mirror the commuting time claims of dog-handler agents, because the elements of that analysis are applicable, whether there is a dog in the car or not. As previously stated, *Bobo II* adopted the *Reich* analysis and *Bobo II* is

controlling law which cannot be ignored by this court.

The analysis begins with a determination of the employee's principal work activity. The court then examines whether the work alleged to have occurred during the commute is "integral and indispensable" to the employee's principal activity. In *Bobo II* and here, the employees were or are law enforcement personnel commuting in government vehicles. The principal activities of plaintiffs here are discernable, and the analysis of the commuting time activities under the "integral and indispensable" standard is perfectly analogous to the analysis in *Bobo II*. The court finds nothing in the facts of this case which would prevent the application of the *Reich* analysis.

The court also notes that many of the claimed burdens or work activities alleged to have occurred during the commutes in *Bobo II* are identical to the government-imposed burdens on commuting alleged in this case. Both the *Bobo II* plaintiffs and these plaintiffs were prohibited from making personal stops during their commutes in government vehicles. *Bobo II*, 136 F.3d at 1468; Pls.' 2004 Mot. at 7. Monitoring the vehicle radio was one of the burdens alleged in *Bobo II*, 136 F.3d at 1468, and is a burden alleged here, Pls.' 2004 Mot. at 7. Responding to emergency calls was alleged to be a compensable work activity in *Bobo I*, 37 Fed.Cl. at 703 n. 23, and emergency response availability is cited here as one of the reasons why these plaintiffs are commuting in government vehicles, Pls.' 2004 Facts ¶¶ 15, 90–91, 139, and as a rationale for why these commutes constitute compensable work time, Pls.' 2004 Mot. at 6, 8. These factual similarities make it clear that the reasoning of *Bobo II* should be applied to this case.

### 3. The *Bobo II* Plaintiffs Received Compensation for Some Duties Performed at Home or During Commuting Time Periods

Plaintiffs point out that the *Bobo II* plaintiffs received compensation for dog-care activities performed at home. Pls.' 2004 Mot. at 16. The *Bobo I* court noted that each dog-handler agent was paid for one hour of daily

work at home to take care of the dog. 37 Fed.Cl. at 702 n. 21. But except for one type of dog-care activity, the cleaning of the portable dog kennels,[10] the court did not apply the daily one hour of pay to any of the dog-care activities that were alleged to have occurred during the agents' commuting time. *Id.* at 702. There is no indication in *Bobo I* or *Bobo II* that dog-care activities which occurred during commuting time were found to be noncompensable because of compensation received for dog care at home. That compensation was irrelevant to the court's *Reich* analysis because it did not concern the commuting time work alleged to be compensable.

Plaintiffs also point out that the *Bobo II* plaintiffs received compensation for emergency response activities performed during commuting time periods. Pls.' 2004 Mot. at 16. This fact must be put in context. First, the *Bobo I* court held that emergency response activity during the agents' commutes had not been shown to be more than insubstantial in order to overcome the *Lindow de minimis* threshold. 37 Fed.Cl. at 702–03. The *Bobo I* court then noted that certain dog-handler agents, those who had alleged the most frequent emergency response activity, had received " 'administratively uncontrollable overtime' pay whenever they respond[ed] to emergency calls while commuting." *Id.* at 703 (quoting plaintiff declarations in that case). This was not an element of the *Reich* analysis of compensable work activities, however. Instead, the court stated that it "cannot discern any rationale for paying plaintiffs for tasks that they already receive compensation for performing." *Id.* The court expressed a concern for and barred double recovery for what might otherwise have been compensable work time.

Here, there is a similar concern that plaintiffs have already received compensation by way of the 2003 settlement agreement for any emergency response activities that might have occurred during commuting. Tr. at 29, 77–79. This interpretation of the 2003 settlement agreement was uncontroverted by plaintiffs. If plaintiffs were now pursuing overtime pay for work during commuting other than simply driving, the same "double recovery" concern expressed in *Bobo I* would be present here. However, the only claims plaintiffs are pursuing in their 2004 motion are for time solely spent driving while commuting in government vehicles, and to these claims the court need only apply the *Reich* analysis. The *Reich* analysis was also determinative in *Bobo I* and *Bobo II.*

The compensation practices discussed in *Bobo I,* although factually distinguishable from this case, do not diminish the applicability of the *Reich* analysis utilized in *Bobo I* and *Bobo II.*

### 4. The "Trivial" Nature of the Dog–Care Duties Claims in *Bobo II*

Plaintiffs attempt to distinguish *Bobo II* from this case by stating that "the *Bobo [II]* plaintiffs sought compensation for time spent on fairly trivial activities such as allowing their dogs to relieve themselves during commutes, clearly an irregular activity consuming very little time in the aggregate that would be extremely burdensome to record and review," and by contrasting those claims with plaintiffs' assertion that "[h]ere there is no question that [the compensable] travel time of [these] FLSA non-exempt plaintiffs was (1) easily determined and recordable; (2) substantial; and (3) a regular part of the working life of the plaintiffs." Pls.' 2004 Mot. at 16–17. Although the decision in *Bobo II* did discuss certain dog-care activities that would be compensable if not *de minimis,* 136 F.3d at 1468, the claims of the *Bobo II* plaintiffs were for the entire commuting time and were founded not just on the dog-care duties, but were also argued to be compensable because of other duties and burdens related to their principal activity of enforcing immigration laws, *see Bobo I,* 37 Fed.Cl. at 699 (noting that those "plaintiffs claim[ed] to ... listen[ ] to and sign[ ] off and on their vehicle radios, observ[e] traffic, and look[ ] out for suspicious activity [throughout their

---

10. The court found that kennel cleaning was not performed while driving, and that this cleaning was one of the activities that occurred after or before commuting which were already compensated by the one hour's pay allotted daily for dog care. *Bobo I,* 37 Fed.Cl. at 702 & n. 21.

commutes,] [i]n an effort to render the entire duration of their commutes compensable"). Because the *Bobo II* plaintiffs claimed that their entire commuting time was compensable, and because plaintiffs here also claim that their entire commuting time is compensable, there is no factual difference between *Bobo II* and this case related to the scope of the driving time claims alleged.

### 5. A Custom or Practice Existed Here of Compensating This Type of Commuting Time for Other Employees, but no Such Practice was the Case in *Bobo II*

As discussed *supra* in parts III.A and IV.A of this opinion, the custom or practice alleged by plaintiffs here of compensating non-exempt GS–5 and GS–7 law enforcement employees in some [11] federal agencies for their commuting time in government vehicles does not establish a custom or practice of any relevance to the 2004 motions. Plaintiffs here are GS–12 employees of the five concerned agencies. The statute only creates compensability by reason of custom or practice for those employees who directly benefitted from that custom or practice. 29 U.S.C. § 254(b)(2). Plaintiffs have alleged no facts from which it could be inferred that plaintiffs concerned by the 2004 motions were at any time the beneficiaries of a custom or practice of compensated commuting time. Because there is no relevant custom or practice here, and there was no relevant custom or practice addressed in *Bobo II*, *Bobo II* is indistinguishable on the basis of customs and practices of compensable commutes.[12]

### 6. 31 U.S.C. § 1344(a) (2000)

Plaintiffs allege that *Bobo II* is distinguishable from this case because 31 U.S.C. § 1344(a)(2)(B) was not "at issue in *Bobo [II]*." Pls.' 2004 Opp. at 23. It is unclear whether plaintiffs mean to argue that this statutory provision was not applicable in *Bobo II*, or whether its significance was not raised by the parties in that case. The court will address both arguments.

The relevant language of section 1344(a) is reproduced here:

(a)(1) Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.

(2) For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is—

(A) required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section, or

(B) essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties,

is transportation for an official purpose, when approved in writing by the head of the Federal agency.

31 U.S.C. § 1344(a). Section (g)(1) of the statute defines "passenger carrier" to include "a passenger motor vehicle ... that is owned or leased by the United States Government." *Id.* § 1344(g)(1).

It is true that section § 1344(a)(2)(B) was not discussed in either *Bobo I* or *Bobo II*. It is not true, however, that section § 1344(a)(2)(B) did not have applicability to

---

**11.** Defendant contests this assertion as it applies to IRS and DEA, stating that "the evidence offered by plaintiffs establishes that at least two of the agencies involved [in the 2004 motions] did not pay their agents for home-to-work driving during the times in question, even when the agents were nonexempt." Def.'s 2004 Mot. at 32 (citing Pls.' 2004 App. at 108–09, 404–07).

**12.** As previously discussed in part III.A of this opinion, on these facts the court need not reach the issue of the applicability of section 254(b) to federal employees.

the government vehicle use of the *Bobo II* plaintiffs, in exactly the same way this section has applicability to the government vehicle use of plaintiffs here. The statute states that the expenditure of federal funds for government vehicles for the home to work travel of federal employees is permissible if "essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties," and that this use constitutes "transportation for an official purpose." 31 U.S.C. § 1344(a). This restriction on federal funds, and the authorized expenditure exception to this restriction, applies equally to border patrol agents in the *Bobo II* case and to plaintiffs here.

If indeed section 1344(a)(2)(B) was not raised by the parties in *Bobo I* and *Bobo II*, plaintiffs might be proposing, although it is not clear from their brief, that *Bobo II* could have been decided differently if this statute were part of the analysis. This argument would fail, however, because section 1344(a)(2)(B) is not relevant to the FLSA claims in *Bobo II* or here. The court has found no case that applied 31 U.S.C. § 1344(a)(2)(B) to the commuting time overtime pay claims of federal law enforcement personnel. Section 1344(a) does not appear to have any cross-references to FLSA provisions. Plaintiffs have shown no connection between the "essential" and "official purpose" requirements for the use of a government vehicle for commuting found in section 1344(a), and the FLSA determination of whether that commuting time would be compensable work time.

Because plaintiffs have not shown the relevance of section 1344(a)(2)(B) to the claims here or to the claims in *Bobo II*, *Bobo II* is not distinguishable on the grounds that in *Bobo II* the Federal Circuit failed to discuss this statutory provision.

## C. The OPM Interpretation of FLSA and the Portal–to–Portal Act Compared with the *Bobo II* Court's Interpretation of These Statutes

### 1. FPM Letter No. 551–10

Although FPM Letter No. 551–10 is directly on point and in support of plaintiffs'

claims here for compensable driving time, it is far from certain that the *Bobo II* court would have deferred to the FPM Letter's guidance in interpreting FLSA and the Portal–to–Portal Act, had emergency response availability been the primary reason for the commutes in government vehicles of the border patrol agents in that case. First, the *Bobo II* court was following the guidance of a sister circuit in applying the *Reich* analysis to a commuting time claim. 136 F.3d at 1468. The Federal Circuit has stated that

> [a]s a general matter, we "do not create conflicts among the circuits without strong cause." We adhere to this view because "federal law (unlike state law) is supposed to be unitary."

*Wash. Energy Co. v. United States,* 94 F.3d 1557, 1561 (Fed.Cir.1996) (citations omitted).

The Second Circuit in *Reich* stated that "to resolve the[se commuting time claims], it is necessary to return to the basic principle that underlies the FLSA: Employees are entitled to compensation only for 'work.'" 45 F.3d at 651. Quoting *Tennessee Coal,* 321 U.S. at 598, 64 S.Ct. 698, the *Reich* court defined work as "an activity ... ([that is] compensable under the FLSA) if it involves 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" 45 F.3d at 651. Applying this principle to canine unit officers and their commutes in that case, the Second Circuit decided that "[h]ere, however, the activity of commuting involved neither exertion nor loss of time." *Id.* For these commutes which demanded no extra exertion or extra time because of employer requirements, the *Reich* court stated that "[w]e therefore conclude that the time spent by the handlers driving to and from work with their dogs, except to the extent that actual duties of care, feeding, training, walking or cleaning up occur during such commute, is not compensable work." *Id.* at 652.

This conclusion in *Reich* is in direct conflict with FPM Letter No. 551–10. The FPM Letter suggested that the simple act of driving a government vehicle from home to

work and work to home, with no extra effort or extra time affecting the commute, if done for the purpose of facilitating potential emergency response from employees' homes, was compensable under FLSA. The Federal Circuit would not have lightly decided to reject the conclusion of a sister circuit in favor of the guidance in FPM Letter No. 551–10.

Second, the holding in *Reich* depended on a carefully reasoned interpretation of FLSA and the Portal–to–Portal Act and Supreme Court precedent, all of which are binding on this court and the Federal Circuit. In *Bobo II*, the Federal Circuit examined commuting time claims under these precedents, and pursuant to the standard of review for summary judgment stated that "we accept as true that the restrictions placed upon the INS Agents' commutes are compulsory, for the benefit of the INS, and closely related to the INS Agents' principal work activities." 136 F.3d at 1468. Despite these characteristics which would otherwise render work performed during the commutes compensable, the *Bobo II* court held that "the burdens alleged are insufficient to pass the *de minimis* threshold." *Id.* (citing *Anderson,* 328 U.S. at 692, 66 S.Ct. 1187). This holding in *Bobo II* is also in direct conflict with the FPM Letter's guidance, which suggested that the mere act of commuting in a government vehicle, if that commute was for the purpose of fostering emergency response availability from the employee's home, is compensable under FLSA even if no burdens beyond the minor restrictions commented on in *Bobo II* have been imposed and no work was done during the commute.

Therefore, the court agrees with defendant's position that rather than distinguish-

ing *Bobo II,* the fact that FPM Letter No. 551–10 is of greater importance and relevance to the claims in this case simply means that the FPM Letter's interpretation of FLSA and the Portal–to–Portal Act is in opposition to the *Bobo II* court's interpretation of those same statutes. Plaintiffs recognize, at least implicitly, that this court is bound by the holding in *Bobo II,* by stating that plaintiffs agree with defendant's recognition that "if OPM's position is not inconsistent with *Bobo [II],* it is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) [(*Chevron*)]." Pls.' 2004 Opp. at 23. Although the question of the level of deference that should be given an FPM letter such as the one at issue here is an interesting one,[13] this court is precluded from that inquiry because FPM Letter 551–10 is at odds with the controlling law in this circuit.

Plaintiffs also allege that a variety of regulations, not just FPM Letter No. 551–10, support compensability of the commuting time claims here. Plaintiffs' citations to regulations include 5 C.F.R. §§ 551.401, 551.422 and 29 C.F.R. § 785.11. However, none of these regulations are directly on point for the commuting time claims alleged here. Although plaintiffs attempt to connect the guidance of FPM Letter No. 551–10 and these regulations in order to show that the FPM Letter "provisions were incorporated into the regulations, handbooks and manuals of agencies involved in this case," Pls.' 2004 Mot. at 4, the court has found no evidence that the relevant provisions of FPM Letter No. 551–10 have been incorporated into the Code of Federal Regulations.[14] Plaintiffs have not

---

**13.** As the Supreme Court noted in *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), "an interpretation contained in an opinion letter [is] not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." Although some deference would be given to an OPM or FPM letter concerning FLSA compensability, these letters would not be given *Chevron*-style deference. *See Christofferson v. United States,* 64 Fed.Cl. 316,

322 (2005) (citing *Christensen,* 529 U.S. at 587, 120 S.Ct. 1655, in support of the deference this court accorded to FPM Letter No. 551–24 (1992) and for the proposition that "agency interpretations in opinion letters are not entitled to *Chevron*-style deference but may be used as persuasive authority").

**14.** The FPM Letter was referenced, however, in the Federal Register, as providing "in depth instructions, with examples, on how the rules [for compensable travel time] are to be applied under [FLSA]." 45 Fed.Reg. 85,659, 85,661 (Dec. 30, 1980).

shown that OPM regulations interpret FLSA to provide compensation for the commuting time claims asserted here. To the extent that FPM Letter No. 551–10 could be considered to have had the force and effect of an OPM regulation, the FPM Letter provision concerning commuting time pay cited by plaintiffs cannot stand against the Federal Circuit's controlling statutory interpretation of FLSA and the Portal–to–Portal Act issued in *Bobo II. See R & W Flammann GmbH v. United States,* 339 F.3d 1320, 1324 (Fed.Cir. 2003) ("A regulation that contravenes a statute is invalid.") (citations omitted).

### 2. Current OPM Guidance on Commuting Time Claims Related to Emergency Response Availability From Employees' Homes

The OPM website currently offers a different interpretation of FLSA than the one expressed in FPM Letter No. 551–10:

Commuting Time

For FLSA-covered employees, normal commuting time from home to work and from work to home is not hours of work. (See 5 C[.]F[.]R[.] [§ ] 551.422(b).) However, commuting time may be hours of work to the extent that the employee is required to perform substantial work under the control and direction of the employing agency-i.e., productive work of a significant nature that is an integral and indispensable part of the employee's principal activities. The fact that an employee is driving a Government vehicle in commuting to and from work is not a basis for determining that commuting time is hours of work. (See *Bobo* decision cited in the References section[, which cites to *Bobo II,* and notes that *Bobo II* affirmed *Bobo I*].) Similarly, for FLSA-exempt employees, normal commuting time from home to work and from work to home is not hours of work. (See 5 C[.]F[.]R[.][§ ] 550.112(j)(2).) However, commuting time may be hours of work to the extent that the employee is officially ordered or approved to perform substantial work while commuting.

OPM website, "Hours of Work for Travel" page, found at http://www.opm.gov/oca/worksch/html/travel.asp, last visited April 19, 2005. OPM appears to now have adopted *Bobo II* as the controlling interpretation of commuting time claims under FLSA. For these reasons, the court may not apply the guidance of FPM Letter No. 551–10 in the stead of the *Reich* analysis in *Bobo II.*

### D. Alleged Facts of the Parties in the 2004 Motions

Defendant asserts that the plaintiffs encompassed in its 2004 motion are "GS–12 criminal investigators with the Bureau of Alcohol, Tobacco and Firearms ('BATF'), the Drug Enforcement Administration ('DEA'), the Internal Revenue Service Criminal Investigation Division ('IRS–CID'), the Customs Service [USCS], and the Secret Service [USSS]." Def.'s 2004 Facts ¶ 1. This assertion is uncontroverted. These positions fall within the law enforcement personnel category reviewed in *Reich* and *Bobo I.* The only type of claim addressed in defendant's 2004 motion is commuting time claims for " 'time spent *solely* driving' " a government vehicle to and from work, as substantiated by the 2003 settlement agreement concerning these plaintiffs. *Id.* ¶ 2 (quoting 2003 settlement agreement, emphasis added by defendant). This is a type of claim addressed in *Bobo I* and *Bobo II.* Despite plaintiffs' contention that defendant "has submitted *no facts* in support of its motion," Pls.' 2004 Opp. at 33, the court finds that defendant has identified the plaintiffs, claims, and controlling law concerning those claims to a degree sufficient to decide defendant's 2004 motion as a matter of law.

Plaintiffs, for their part, allege facts sufficient to show that emergency response availability is the reason why at least some of the plaintiffs concerned by plaintiffs' 2004 motion commuted in government vehicles. Pls.' 2004 Facts ¶¶ 15, 90–91, 139. Plaintiffs also offered factual allegations concerning the burdens on plaintiffs while driving government vehicles to and from work, such as the requirement for monitoring vehicle radios, *e.g., id.* ¶¶ 27, 90, and the prohibition on personal stops during the commute, *e.g., id.* ¶¶ 95, 142. Just as the plaintiffs in *Bobo II*

had to transport dogs from home to work, plaintiffs here are alleged to transport a variety of law enforcement equipment in the government vehicles. *E.g., id.* ¶¶ 39–42, 108. However, none of the burdens alleged here exceed the burdens on plaintiffs' commutes in *Bobo II*. Rather, when all favorable factual inferences are given plaintiffs, the burdens here are, if anything, less onerous than transporting a dog in a portable dog kennel, as was the case in *Bobo II*.

Under the controlling law of this circuit, plaintiffs' commutes, by and of themselves, are not compensable merely because they take place in a government vehicle and facilitate emergency response from the plaintiffs' homes. But for the stipulation in the 2003 settlement agreement limiting claims to "time solely spent driving," plaintiffs might have asserted that compensable work occurred during their commutes, but they could not and have not done so. Even if this type of claim had been preserved, no evidence of otherwise compensable work frequency, duration, or record-keeping difficulties was submitted by plaintiffs—thus, plaintiffs could not meet the *de minimis* threshold requirement established by *Bobo II* for commuting time claims. Because the facts necessary to support the elements of a successful commuting time claim have not been alleged by plaintiffs, plaintiffs cannot resist summary judgment in favor of defendant. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Plaintiffs' 2004 motion must be denied. Plaintiffs' burden was to prove that compensable work under FLSA was performed and that this work was not compensated. *See Anderson*, 328 U.S. at 686–87, 66 S.Ct. 1187 ("An employee who brings suit under § 16(b) of [FLSA] for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated."). Plaintiffs have not alleged facts sufficient to show that summary judgment is warranted as a matter of law for their commuting time claims.

Plaintiffs 2004 motion on the driving time issue is denied, and defendant's 2004 motion on the driving time issue is granted.

## CONCLUSION

For these reasons, it is hereby **OR-DERED** that:

(1) Defendant's Motion for Partial Summary Judgment of August 12, 2002 is **GRANTED.** Plaintiffs' Motion for Partial Summary Judgment Regarding the "Driving Time" Issue of August 2, 2004 is **DENIED**, and Defendant's Cross–Motion for Partial Summary Judgment of September 22, 2004 is **GRANTED.**

(2) Each party shall bear its own costs.