# United States Court of Appeals for the Federal Circuit

2008-5187

TERRY J. EASTER and MICHAEL EGGLESTON,

Plaintiffs,

and

STEVEN A. HUDSON, MICHAEL S. MORGAN,
VANESSA R. SPENCER, and JOHN A. WINSLOW,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.


Jules Bernstein, Bernstein & Lipsett, P.C., of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Linda Lipsett; and Edgar James, James & Hoffman, P.C., of Washington, DC.

Shalom Brilliant, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Todd M. Hughes, Deputy Director. Of counsel was William P. Rayel, Trial Attorney.

Appealed from: United States Court of Federal Claims

Chief Judge Emily C. Hewitt

# United States Court of Appeals for the Federal Circuit

2008-5187

TERRY J. EASTER and MICHAEL EGGLESTON,

Plaintiffs,

and

STEVEN A. HUDSON, MICHAEL S. MORGAN,
VANESSA R. SPENCER, and JOHN A. WINSLOW,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims
in 04-CV-1435, Chief Judge Emily C. Hewitt.

_____

DECIDED:  August 5, 2009

_____

Before MAYER, and BRYSON, <u>Circuit Judges</u>, and SPENCER, <u>Chief District Judge</u>.[*]

BRYSON, <u>Circuit Judge</u>.

_____

[*]   The Honorable James R. Spencer, Chief Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

The dispute in this case is identical in all material respects to the dispute that was before this court less than three years ago in Adams v. United States, 471 F.3d 1321 (Fed. Cir. 2006), and is similar to the dispute that was previously before this court in Bobo v. United States, 136 F.3d 1465 (Fed. Cir. 1998). The task in this case is therefore mainly to determine whether there is any reason for us to distinguish or depart from the Adams and Bobo decisions. We conclude that there is not, and we therefore affirm the decision of the Court of Federal Claims granting summary judgment in favor of the government.

We have little to add to the thorough opinion of the Court of Federal Claims. Nonetheless, at the risk of redundancy, we set forth our reasoning in this case because there are a large number of similar cases pending before the Court of Federal Claims, and our resolution of various issues raised by the appellants in this case may facilitate the disposition of those other cases.

I

The four appellants are federal employees who are required, as a condition of their employment, to use government vehicles when driving between their homes and their places of work as part of their daily commutes. They are not allowed to use the vehicles for personal purposes, including running personal errands on their way to or from work. In light of the requirements that (1) they use government vehicles for commuting, (2) they refrain from using the vehicles for personal purposes, and (3) they transport work-related equipment with them when they use the vehicles for commuting, the appellants argue that their commuting time constitutes a compensable period of work under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.

II

The plaintiffs in the Bobo case were a group of Border Patrol dog handlers. They were required to have their dogs reside with them and were paid for conducting dog care tasks at home. The dog handlers were also required to use special government vehicles to commute between their homes and their workplaces. They were required to transport the dogs with them on that commute, and they were not allowed to engage in personal business during the commute. They were not paid for the commuting time.

The dog handlers filed suit in the Court of Federal Claims, arguing that their time spent commuting constituted compensable worktime, particularly in light of the various restrictions and requirements that governed their commutes. The Court of Federal Claims and this court, however, both held that the commuting did not constitute work for purposes of the FLSA, notwithstanding the restrictions imposed by the agency. The court noted that regulations of the Office of Personnel Management spell out the general requirement of the FLSA that federal employees who are not exempt from the Act must be paid for the time they spend "performing an activity for the benefit of an agency and under the direction and control of the agency." 5 C.F.R. § 551.401(a). The court explained, however, that the general rule captured by that regulation is subject to the Portal-to-Portal Act, which amended the FLSA, and which provides that compensation need not be provided for time spent traveling to and from the employee's place of work or for activities "which are preliminary to or postliminary to" the employee's principal work activity. 29 U.S.C. § 254(a). Judicial constructions of that Act, the Bobo court explained, had led to the general rule that activities performed before or after the employee's regular shift are compensable "if those activities are an

integral and indispensable part of the principal activities" of the employees' work. <u>Bobo</u>, 136 F.3d at 1467, quoting <u>Steiner v. Mitchell</u>, 350 U.S. 247, 256 (1956). The <u>Bobo</u> court then concluded that even though the restrictions placed upon the agents' commutes were mandatory, "the burdens alleged are insufficient to pass the <u>de minimis</u> threshold" and therefore are not compensable. 136 F.3d at 1468. The court specifically adverted to the agents' argument that the prohibition on making personal stops during their commutes made the agents' commutes compensable work time and rejected that argument, holding that "such a restriction on their use of a government vehicle during their commuting time does not make this time compensable." <u>Id.</u>

In <u>Adams</u>, decided nine years later, the court followed the analysis in <u>Bobo</u> and reached the same result, this time with respect to a group of several thousand law enforcement officers who were issued government police vehicles. The officers were required to commute from home to work in their vehicles, they were required to keep their weapons and other law-enforcement-related equipment with them, and they were prohibited from using the vehicles for personal business. Following the analysis used in <u>Bobo</u>, the court concluded that the officers' commuting time, even though subject to certain restrictions, was not compensable under the FLSA, particularly in light of the provisions of the Portal-to-Portal Act. <u>Adams</u>, 471 F.3d at 1326-28.

III

The trial court held that the facts in this case are indistinguishable from the facts in <u>Bobo</u> and <u>Adams</u> and that the court was compelled by those precedents to reject the appellants' claims. In her opinion, the trial judge addressed each of the arguments raised by the appellants as to why <u>Bobo</u> and <u>Adams</u> did not dictate a similar result in

this case, and she rejected them all. <u>Easter v. United States</u>, No. 04-1435C (Fed. Cl. Aug. 1, 2008). In particular, she declined to entertain the argument that those cases were simply wrongly decided and should not be followed, since the decisions of this court are binding precedent for the Court of Federal Claims. She also rejected the argument that <u>Bobo</u> and <u>Adams</u> are inconsistent with Supreme Court precedent and prior Federal Circuit precedent and should not be followed for that reason as well. After the trial court entered summary judgment against them, the appellants took this appeal.

IV

At the outset, we address a procedural point raised by the appellants regarding the entry of summary judgment. The appellants filed their complaint in September 2004. The case was stayed pending the litigation in the <u>Adams</u> case, which the plaintiffs in this case represented was "likely to call for a determination of the same or substantially similar questions as are presented in this case." In March 2008, after the completion of the proceedings in <u>Adams</u>, the trial court lifted the stay and ordered the government to file any dispositive motions by April 4, 2008. The government then moved for dismissal under Rule 12(b) of the Rules of the Court of Federal Claims ("RCFC") for failure to state a claim on which relief can be granted. The appellants filed an opposition to that motion and attached to their opposition the declarations of two of the appellants. On August 1, 2008, after further briefing and oral argument, the court entered a dispositive order in which the court treated the government's motion to dismiss as a motion for summary judgment and then entered summary judgment in favor of the government.

Like the equivalent Federal Rule of Civil Procedure, RCFC 12(b) (the pertinent portion of which has recently been re-codified as RCFC 12(d)) allows a court to treat a motion to dismiss for failure to state a claim as a summary judgment motion if "matters outside the pleadings are presented to and not excluded by the court." Relying heavily on this court's decision in Thoen v. United States, 765 F.2d 1110 (Fed. Cir. 1985), the appellants argue that under the circumstances of this case it was error for the trial court to convert the government's Rule 12 motion into a summary judgment motion.

Whether to accept extra-pleading matter on a motion for judgment on the pleadings and to treat the motion as one for summary judgment is within the trial court's discretion. See Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38-39 (1st Cir. 2004); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1371, at 273 (3d ed. 2004). Before the court may convert a motion for judgment on the pleadings into a motion for summary judgment, the court must ordinarily provide notice of its intention to do so. Several courts have held, however, that in a case such as this one, in which it is the non-moving party that introduces extra-pleading matter, that party is deemed to be on constructive notice that the court may convert the motion into a motion for summary judgment. See Rupert-Torres v. Hospital San Pablo, Inc., 205 F.3d 472, 475 (1st Cir. 2000); Gurary v. Winehouse, 190 F.3d 37, 42-43 (2d Cir. 1999); Hamm v. Rhone-Poulenc Rorer Pharms., Inc., 187 F.3d 941, 948-50 (8th Cir. 1999); San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 477 (9th Cir. 1998). Although the Third Circuit has rejected that "constructive notice" approach, it has held that the conversion is nonetheless subject to harmless error analysis. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 288-89 (3d Cir. 1999). In this

case, we need not decide whether the appellants had constructive notice of the conversion, as we conclude that any error on the trial court's part with respect to the conversion was harmless.

Throughout this litigation, the issue at the core of the dispute has been treated as purely legal; there has been no serious contention that the facts are contested. The facts set forth in the affidavits submitted by the two appellants were not in any way challenged by the government, and those facts are identical in all material respects with the facts presented in the Adams litigation. Significantly, the appellants have not suggested that they had additional facts that they were unable to present to the trial court because of the court's decision to convert the government's motion into a motion for summary judgment, and the government made no effort to introduce any factual presentation of its own. In sum, this case involves essentially undisputed facts and turns on the legal consequences that attach to those facts. Accordingly, nothing of significance turns on the distinction between a ruling on the pleadings and summary judgment.

The question whether a party has had a "reasonable opportunity" to present pertinent summary judgment materials when a trial court converts a motion to dismiss into a motion for summary judgment "necessarily turns on the way in which the particular case under consideration has unfolded." Whiting v. Maiolini, 921 F.2d 5, 6 (1st Cir. 1990). In addition to looking to whether notice, actual or constructive, has been given, courts have disfavored conversion when "the motion comes quickly after the complaint was filed [or] discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion." Rupert-Torres, 205 F.3d at

475. In this case, the trial court did not act precipitously in converting the motion to dismiss into a motion for summary judgment; the court's ruling came five months after the court lifted the stay of the proceedings in this case, and well after the government had responded to the appellants' discovery requests. In addition, the trial court engaged in a colloquy with the parties during oral argument on the motion to dismiss regarding whether the proceeding should be treated as a summary judgment proceeding in light of the appellants' submission of extra-pleading materials. The court's action therefore could not have come as a surprise to the appellants.

Finally, nothing in Thoen alters this analysis. In Thoen, the government moved for dismissal on jurisdictional grounds, and the trial court converted the motion to a motion for summary judgment on the merits. 765 F.2d at 112-13. The change from jurisdiction to the merits meant that the court was addressing an issue entirely different from that presented in the government's motion. This court held that the government's submission of materials outside the pleadings in support of its jurisdictional motion did not put the plaintiff on constructive notice that the court would address the merits of the dispute. Id. at 114. In this case, it was the plaintiffs who introduced the extra-pleading material. Moreover, the motion to dismiss in this case was on the merits, so the government's motion presented issues that were entirely congruent with those decided by the court in entering summary judgment. For those reasons, the trial court's conversion of the government's motion was not contrary to the decision in Thoen. And because the trial court's action did not result in any discernible prejudice to the appellants, we are not required to reverse the judgment based on the assertedly improper conversion.

V

On the merits, we begin with the straightforward proposition that this court's prior decisions in <u>Bobo</u> and <u>Adams</u> are binding on this panel. In the absence of an en banc decision overruling those cases or some other intervening event—such as a statutory or regulatory change that would require us to revisit those decisions, or an intervening Supreme Court decision clearly undermining <u>Bobo</u> and <u>Adams</u>—we are required to adhere to those precedents. Thus, to the extent that the appellants' argument is simply a challenge to the correctness of this court's decisions in <u>Bobo</u> and <u>Adams</u>, we reject it.

With respect to the appellants' argument that Supreme Court or other Federal Circuit decisions require us to overturn the decisions in <u>Bobo</u> and <u>Adams</u>, we disagree. To begin with, several of the decisions on which the appellants rely predate <u>Adams</u> and thus do not qualify as subsequent authority that would call <u>Adams</u> into question. In any event, even without regard to the issue of timing, we do not find in those authorities any persuasive ground for reconsidering <u>Bobo</u> and <u>Adams</u>.

A

In seeking to avoid the <u>stare decisis</u> effect of <u>Bobo</u> and <u>Adams</u>, the appellants invoke the Supreme Court's decisions in <u>National Cable & Telecommunications Ass'n v. Brand X Internet Services</u>, 545 U.S. 967 (2005), and <u>Long Island Care at Home, Ltd. v. Coke</u>, 551 U.S. 158 (2007). As the trial court explained, those cases are entirely inapposite, and neither provides any support at all for the appellants.

The two Supreme Court decisions involve specific applications of the general principle of judicial deference to administrative rulemaking generally referred to as the "<u>Chevron</u> doctrine." <u>See</u> <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467

U.S. 837 (1984). In the Long Island Care case, the Court required judicial deference to a Department of Labor regulation that addressed the extent to which the FLSA applies to persons employed to provide companionship services to individuals who are incapable of caring for themselves. The Court noted that Congress had expressly authorized the Labor Department to engage in "gap-filling" with respect to the scope and definition of the terms "domestic service employment" and "companionship services" in the FSLA. 551 U.S. at 165. Because the Supreme Court concluded that the Department of Labor had not exceeded the congressional mandate, it directed the lower courts to defer to the agency's interpretations of those terms.

In the Brand X case, the Court again mandated judicial deference to an agency's interpretation of a statute. In that case, the reviewing court had previously interpreted the statute in one way, and the agency subsequently adopted a different interpretation through an authorized rulemaking process. When the reviewing court overturned the agency's regulatory interpretation based on its own prior decision, the Supreme Court reversed, holding that because the statutory language in question was ambiguous, the reviewing court had to defer to the agency's reasonable interpretation of that language, even though the reviewing court had previously interpreted the same language in a different manner before the agency had construed it. 545 U.S. at 983. Thus, the Supreme Court concluded, the fact that the reviewing court had previously interpreted the statutory language did not deprive the agency of its congressionally mandated authority to interpret that language, nor did it free the reviewing court from its responsibility to exercise its reviewing responsibilities under the deferential mandate of Chevron.

Neither of those cases has any pertinence here. Unlike in Brand X, this is not a case in which a court has construed an ambiguous statute in a particular way, after which an agency has issued regulations interpreting the statute differently than did the court. The pertinent OPM regulations have remained the same since 1980, and there have been no regulatory changes since Bobo and Adams that would suggest agency disagreement with those decisions. Unlike in Long Island Care, this court in Bobo and Adams did not reject an agency's regulatory interpretation of a statute that it administers. Although the appellants complain that the Adams court ignored the regulations, a more plausible explanation for the court's failure to advert to the regulations in Adams is that those regulations were not helpful to the plaintiffs in that case and thus deference to those regulations would not have altered the court's decision. As we discuss below, the applicable OPM regulations did not support the appellants' position in Adams, and they do not support the appellants' position here.

The appellants point to an OPM regulation, 5 C.F.R. § 551.422(a)(2), which provides that time spent traveling shall be considered hours of work if an employee "is required to drive a vehicle or perform other work while traveling." That regulation, however, leaves unclear the extent to which "traveling," as the term is used in that regulation, encompasses commuting between home and work. A related OPM regulation, 5 C.F.R. § 551.422(b), deals with that specific issue and makes clear that an employee "who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal 'home to work' travel; such travel is not hours of work." Those regulations do not support the appellants' position; if anything, they tend to support the government. Even more telling, however, is the informal

guidance provided by OPM as to the meaning of the latter regulation. In a website publication cited by both parties, OPM expanded upon the commuting regulation and wrote the following, citing the Bobo decision as authority:

> [C]ommuting time may be hours of work to the extent that the employee is required to perform substantial work under the control and direction of the employing agency—i.e., productive work of a significant nature that is an integral and indispensable part of the employee's principal activities. The fact that an employee is driving a Government vehicle in commuting to and from work is not a basis for determining that commuting time is hours of work.

Hours of Work for Travel, http://www.opm.gov/oca/worksch/html/travel.asp. To the extent that the OPM regulations are ambiguous, the agency's guidance is an authoritative interpretation that warrants deference. See Auer v. Robbins, 519 U.S. 452, 461 (1997).

In sum, because the agency regulations do not support the appellants' position in this case, neither Brand X nor Long Island Care provides any reason to question the decisions in Bobo and Adams or any reason to depart from those decisions here. The Supreme Court cases are simply dry holes for the appellants.

B

The appellants next cite the decision of this court in Billings v. United States, 322 F.3d 1328 (Fed. Cir. 2003), in support of the proposition that Congress intended for OPM, to the extent practicable, to make its guidelines for the application of the FLSA in the federal sector generally consistent with corresponding Department of Labor regulations applicable to the private sector. Even assuming that we could overrule our prior decision in Adams based on its asserted failure to follow Department of Labor regulations, we would not do so, because the premise of the appellants' argument is

incorrect:  There is no conflict between the OPM regulations and the parallel regulations of the Department of Labor.

The applicable Labor Department regulations are generally similar to OPM's, and do not directly conflict with respect to the subject matter of this case.   Section 553.221(e) of the Labor Department regulations, 29 C.F.R. § 553.221(e), establishes the baseline principle that "[n]ormal home to work travel is not compensable, even where the employee is expected to report to work at a location away from the location of the employer's premises."  See also id. § 785.35.  That regulation is followed by one that states:

> A police officer, who has completed his or her tour of duty and who is given a patrol car to drive home and use on personal business, is not working during the travel time even where the radio must be left on so that the officer can respond to emergency calls.  Of course, the time spent in responding to such calls is compensable.

Id. § 553.221(f).

The appellants argue that the "police officer" regulation supports them because it provides that a police officer "who is given a patrol car to drive home and use on personal business" is not working.  Extrapolating from that language, they take the regulation to mean that if the officer is not free to use the police vehicle on personal business, he must be working.  That conclusion, however, does not follow.  The fact that the regulation describes a set of facts and states that a case fitting that fact pattern would not require compensation does not mean that if any of the facts were changed, compensation would be required.

The other references from the Department of Labor on which the appellants rely are also unavailing.  The appellants cite a 1986 excerpt from the Field Operations

Handbook of the Department's Wage and Hour Division that deals with "special problems"; that excerpt states that if an employee is required to drive an ambulance home in order to be able to respond to calls immediately, the time spent in driving would constitute hours worked. Department of Labor, Wage and Hour Division, <u>Field Operations Handbook</u> § 31d00(a)(5) (May 30, 1986). They also cite a 1995 opinion letter, WH-543, 1995 WL 17851862, which states that commuting time is not compensable if, among other circumstances, the choice to drive the employer's vehicle is a voluntary one on the part of the employee. Neither reference is directly supportive of the appellants' position in this case. The Field Office Handbook's discussion of the case of an ambulance driver deals with what the Handbook explicitly refers to as a "special problem," and for that reason cannot simply be extrapolated to all public servants who are required to use their official vehicles for commuting. The 1995 opinion letter, like the police officer regulation, describes a circumstance in which compensation is not required but does not expressly state that compensation would be required if any of the listed factors was altered.

Reliance on the 1995 opinion letter is further undercut by congressional action in response to that letter. Reacting to concerns over the 1995 opinion letter and a predecessor opinion letter from 1994, Congress in 1996 enacted an amendment to the Portal-to-Portal Act known as the Employee Commuting Flexibility Act, Pub. L. No. 104-188, §§ 2101-03, 110 Stat. 1755, 1928 (1996), codified at 29 U.S.C. § 254(a)(2). That Act provided that an employee's use of an employer's vehicle for commuting and "activities performed by an employee which are incidental to the use of such vehicle for commuting" is not compensable work if the use of the vehicle is within the normal

commuting area for the employer's business and the use of the employer's vehicle is subject to an agreement between the employer and the employee or an employee representative.

The trial court did not rely on the Employee Commuting Flexibility Act as a basis for its decision in this case because, as the government concedes, the use of government vehicles at issue in this case was not subject to an employer-employee agreement.[1] Nonetheless, the legislative history of that Act makes clear that Congress was not satisfied that the 1994 and 1995 opinion letters struck the proper balance between uncompensated commuting and compensable work. See H.R. Rep. No. 104-585, at 3 (1996). In light of the 1996 legislation, the continuing force of the 1995 opinion letter is therefore open to question. For these reasons, we conclude that there are no regulations or rulings of either OPM or the Department of Labor that dictate a different

---

[1]     The appellants complain that the court in Adams improperly relied on the 1996 Act. While the Adams court cited the language that was added to the Portal-to-Portal Act in that year, the court did so only to make the general point that "merely commuting in a government-owned vehicle is insufficient; the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving." 471 F.3d at 1325. On the merits, the court ruled against the Adams plaintiffs based on Bobo and on the court's conclusion that "the labor beyond the mere act of driving the vehicle is de minimis." Id. at 1328.

The appellants also argue that the court in Adams incorrectly held that the plaintiffs had the burden of proof with respect to the issue of FLSA compensability. The question of liability in Adams, however, turned not on the existence of an exemption from the FLSA, but on whether the driving at issue constituted compensable work under the statute. As the court correctly held in Adams, the plaintiffs had the burden of proof on that issue. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946) ("employee who brings suit for unpaid wages . . . has the burden of proving that he performed work for which he was not properly compensated").

result from that reached by this court in Bobo and Adams. In fact, as noted, to the extent that there is any informal guidance from either agency as to the proper resolution of this dispute, it is found in the discussion on the OPM website, which endorses the approach followed by this court in Bobo.

C

In their brief, the appellants state in passing that this case differs from Adams in that "the claim that they were engaged in compensable Employer required driving from home to their work sites and from their last work site to their homes was not litigated at all in Adams" because in Adams "it was not claimed that the plaintiffs' compensable driving was from home to a 'first stop,' and from a 'last stop' to home." The distinction suggested by that passage is apparently based on the statements in the appellants' declarations in which they assert that their commuting activity often involves driving between home and a location where they are directed on particular occasions, other than a fixed office or regular worksite.

The appellants do not adequately explain why the difference between their situation and that of the appellants in the Bobo and Adams cases requires a different outcome; that is, it is unclear why an employee's travel between home and a fixed workplace should be uncompensated, while the same employee's travel between home and varying work locations within the commuting area should be compensated. Indeed, both the OPM and Department of Labor regulations make clear that if commuting does not otherwise constitute work, the fact that the employee may be commuting to different job sites, rather than a fixed work location, does not make a difference. See 29 C.F.R. § 785.35 ("[O]rdinary home to work travel . . . is a normal incident of employment. This

is true whether he works at a fixed location or at different job sites."); id. § 553.221(e) ("Normal home to work travel is not compensable, even where the employee is expected to report to work at a location away from the location of the employer's premises."); 5 C.F.R. § 551.422(b), (d) (commuting to "temporary duty location" is not compensable if the temporary duty station is within "the limits of the employee's official duty station," i.e., within a prescribed mileage radius of up to 50 miles from the official duty station). In light of the absence of any persuasive argument justifying the distinction alluded to by the appellants, we decline to base a decision in the appellants' favor on those allegations.

AFFIRMED.