**Stephen ADAMS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 90–162C.**

United States Court of Federal Claims.

Dec. 9, 2009.

Jules Bernstein and Edgar James, Washington, D.C., for plaintiffs. Linda Lipsett, Washington, D.C., of counsel.

Shalom Brilliant with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Todd M. Hughes, Deputy Director, United States Department of Justice, Washington, D.C., for defendant.

**OPINION**

LYNN J. BUSH, Judge.

The court has before it cross-motions for summary judgment filed under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). These motions concern the "driving time" overtime pay claims of approximately 6400 federal law enforcement officer plaintiffs in these consolidated cases. Resolution of these driving time claims has been significantly delayed to permit appellate review of the denial of similar claims, and to afford plaintiffs an opportunity to marshal facts that would distinguish these driving time claims from those repeatedly rejected by this court and by the United States Court of Appeals for the Federal Circuit. Because plaintiffs have not shown any material distinction between these claims and others rejected by binding precedent in this circuit, defendant's motion for

summary judgment is granted, and plaintiffs' motion is denied.

**BACKGROUND**

**I. Litigation of Driving Time Overtime Pay Claims of Federal Law Enforcement Officers**

Of the approximately 14,000 plaintiffs in these consolidated cases pursuing overtime pay claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (2006) (FLSA), thousands settled their overtime pay claims related to a prior classification as FLSA-exempt employees but reserved their right to litigate additional overtime pay claims for time spent driving to and from work in government-issued vehicles. In 2005, the undersigned rejected the driving time claims of numerous plaintiffs in these cases, relying, to a great extent, on the Federal Circuit's driving time claims decision in *Bobo v. United States*, 136 F.3d 1465 (Fed. Cir.1998), which sets forth a definitive interpretation of the Portal–to–Portal Act of 1947, now codified at 29 U.S.C. §§ 251–262 (2006). *Adams v. United States*, 65 Fed.Cl. 217 (2005) (*Adams I*), aff'd, 471 F.3d 1321 (Fed. Cir.2006) (*Adams II*). Rejecting plaintiffs' appeal of *Adams I*, the Federal Circuit also relied on *Bobo. See Adams II*, 471 F.3d at 1328 (noting that "the holding in *Bobo* controls the legal conclusion in this case"). The appellants in *Adams II* were not granted rehearing or rehearing en banc by the Federal Circuit, *Adams v. United States*, 219 Fed.Appx. 993 (Fed.Cir. Mar.14, 2007) (Table), nor was certiorari granted by the United States Supreme Court, *Adams v. United States*, 552 U.S. 1096, 128 S.Ct. 866, 169 L.Ed.2d 723 (2008).

Plaintiffs' counsel, nonetheless, has continued to litigate the driving time claims of other federal law enforcement officers before the undersigned and other judges of this court. These claims have been rejected as foreclosed by the precedential holdings of *Bobo* and *Adams II. See, e.g., Easter v. United States*, 83 Fed.Cl. 236, 250 (2008) (*Easter I*), aff'd, 575 F.3d 1332 (Fed.Cir.2009) (*Easter II*). In these cases, the plaintiffs argued that *Bobo* and *Adams II* were either wrongly decided or that these decisions were no long-

er good law. In *Easter II*, the Federal Circuit explicitly held that there was no reason to "depart from the *Adams [II]* and *Bobo* decisions," and indicated that the decision in *Easter II* was meant to "facilitate the disposition of . . . other [driving time] cases" pending before this court. 575 F.3d at 1333. Recently, another decision of this court rejecting driving time claims was affirmed without opinion by the Federal Circuit. *Forbes v. United States*, 84 Fed.Cl. 319 (2008), *aff'd*, 333 Fed.Appx. 573 (Fed.Cir. Oct.13, 2009) (Table).

## II. The Driving Time Claims Now Before the Court

### A. Identified Plaintiffs

There are nine groups of federal law enforcement plaintiffs now presenting their driving time claims for adjudication, working at several federal agencies in various occupational codes and at a number of pay levels. Each of these groups corresponds to a particular settlement agreement reached between plaintiffs and defendant, which settled all overtime pay claims for a distinct group of plaintiffs in these cases, except for "their claims based upon time solely spent driving to and from work in a government vehicle."[1] Def.'s Mot. at 5. These settlement agreements were reached on: (1) October 15, 2003; (2) September 8, 2004; (3) November 1, 2004; (4) December 2, 2005; (5) December 2, 2005; (6) November 22, 2006; (7) March 19, 2007; (8) June 5, 2007; and, (9) June 29, 2007. As shown below, each of these plaintiff groups is furthered identified by employing agency, pay level and occupational code/position title.

### 1. Group One

All of the plaintiffs in Group One were paid at Grade Levels GS–9 through GS–13.[2] The plaintiffs in Group One who worked at the Bureau of Alcohol, Tobacco and Firearms (BATF) had occupational codes designated as GS–856 or 1801. The plaintiffs in Group One who worked at the United States Secret Service (USSS) had occupational codes which were designated as GS–072, 080, 391, 1397 or 1802.

### 2. Group Two

All of the plaintiffs in Group Two were paid at Grade Level GS–12. Each of the plaintiffs in Group Two held the position of criminal investigator, occupational code GS–1811 or 1812. The plaintiffs in Group Two worked at the Department of Commerce (DOC), the Department of the Interior (DOI), the Department of Veterans Affairs (VA), the Environmental Protection Agency (EPA), or the Food and Drug Administration (FDA).

### 3. Group Three

All of the plaintiffs in Group Three were Grade Level GS–12 criminal investigators, occupational code GS–1811, at the Internal Revenue Service Internal Security Division (IRS–ISD).

### 4. Group Four

All of the plaintiffs in Group Four were paid at Grade Levels GS–9 through GS–13 and worked at the Drug Enforcement Administration (DEA). Their occupational codes were GS–080, 334, 391, 856 or 1802.

### 5. Group Five

All of the plaintiffs in Group Five were paid at Grade Levels GS–9 through GS–13 and worked at the United States Customs Service or Immigration and Customs Enforcement (USCS). Their position title was Technical Enforcement Officer.

### 6. Group Six

All of the plaintiffs in Group Six were paid at Grade Level GS–13. Each of the plaintiffs in Group Six held the position of criminal investigator, occupational code GS–1811. The plaintiffs in Group Six worked at BATF, DEA, IRS, USCS or USSS.

---

1. These vehicles are owned or leased by the federal government.

2. These federal employees receive salaries based on the GS (General Schedule) grade levels of their positions.

### 7. Group Seven

All of the plaintiffs in Group Seven were Grade Level GS–12 Marine Enforcement Officers at USCS.

### 8. Group Eight

All of the plaintiffs in Group Eight were paid at Grade Level GS–5 or GS–7. Each of the plaintiffs in Group Eight held the position of criminal investigator, occupational code GS–1811 or 1812. The plaintiffs in Group Eight worked at EPA, IRS, the Fish and Wildlife Service (F & WS), or the Naval Criminal Investigative Service (NCIS).

### 9. Group Nine

All of the plaintiffs in Group Nine were paid at Grade Levels GS–9 through GS–13 and worked at DEA. Each of the plaintiffs in Group Nine held the position of Diversion Investigator.

## B. Nature of the Driving Time Claims

It is undisputed that at relevant times these plaintiffs were required to commute to and from work using a government vehicle. For some plaintiffs, driving a government-issued vehicle during their commutes permitted a quicker response to emergent situations. Pls.' Facts ¶¶ 36, 109, 160, 288. In some cases, it was simply more efficient for the officer to commute in the government vehicle and to have the vehicle readily available for work purposes. *Id.* ¶¶ 36, 230. Regardless of the purpose of the government vehicle, plaintiffs' driving time claims are for time solely spent driving to and from work, not for additional activities such as actual responses to emergencies that arose during commuting hours. Claims of these plaintiffs for overtime pay, other than claims for time solely spent driving a government vehicle to and from work, have all been settled and are no longer before the court. *See* Def.'s Mot. at 12 n. 4 ("The compensability of time spent by plaintiffs performing ... activities [other than driving] is simply not before the Court.").

## DISCUSSION

## I. Standard of Review for RCFC 56 Cross–Motions

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed. Cir.1987) (internal quotations and citations omitted). The moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." RCFC 56(c)(1). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A summary judgment "motion may, and should, be granted so long as whatever is before the ... court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting former version of Fed. R.Civ.P. 56(c)). However, the non-moving party has the burden of producing sufficient evidence that there is a genuine issue of material fact in dispute which would allow a reasonable finder of fact to rule in its favor. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Such evidence need not be admissible at trial; nevertheless, mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is not sufficient to preclude summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505; *see also Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d

831, 835–36 (Fed.Cir.1984) (noting that a party's bare assertion that a fact is in dispute is not sufficient to create a genuine issue of material fact). "The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant." *Barmag*, 731 F.2d at 836. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## II. Analysis

### A. Precedent Squarely on Point

Most of plaintiffs' arguments in favor of their driving time claims assert that *Bobo* and *Adams II* are not good law, and that FLSA, despite the holdings in *Bobo* and *Adams II*, requires compensation for the commuting time at issue here. Plaintiffs concede that these arguments fail in light of the Federal Circuit's recent rejection of identical arguments in *Easter II. See* Pls.' Reply at 1 ("Plaintiffs recognize that under *Easter [II]*, insofar as plaintiffs' claims herein are other than [claims supported by a unique legal theory applicable only to the Group Six plaintiffs, discussed *infra* ], *Easter [II]* would be dispositive."). The court will not, for this reason, discuss plaintiffs' arguments questioning the precedential value of *Bobo* and *Adams II*.[3]

Because the rule of law that governs driving time claims has not changed since *Bobo* and *Adams II* were decided, the court now turns to the facts in the record before the court. Defendant asserts, correctly, that "plaintiffs cannot distinguish their driving claims [at issue here] from those previously adjudicated in *[Adams II].*" Def.'s Mot. at 12. Indeed, plaintiffs do not argue that the commutes of these nine groups of plaintiffs were in any way materially different from the commutes at issue in *Adams II*. Plaintiffs rely, instead, on the declarations of several representative plaintiffs to show how, in their view, the commutes of these nine groups of plaintiffs were burdened by responsibilities imposed by their employing agencies.

■ Nothing in these declarations, or in plaintiffs' proposed findings of uncontroverted fact, shows that the commuting time of these nine groups of plaintiffs was materially different from the commuting time analyzed in *Adams II*. Indeed, these plaintiffs rely extensively on the facts set forth in the briefing of *Adams I*, facts that were reviewed on appeal by the Federal Circuit in *Adams II*. *Compare* Pls.' Facts of June 30, 2009 ¶¶ 024–333 *with* Pls.' Facts of Aug. 2, 2004 ¶¶ 003–312. Plaintiffs bear the burden of showing that there is a genuine issue of material fact preventing dismissal of their driving time claims. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Adams II*, 471 F.3d at 1326 ("Thus, the plaintiffs in this case had the burden of showing that their drive time was compensable work for FLSA purposes and of showing that it does not fall into the set of activities excluded from the definition of compensable

---

3. Plaintiffs suggested that certain decisions of the United States Supreme Court and the Federal Circuit called into question the holdings in *Bobo* and *Adams II*. These cases are: *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007); *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005); *Tafas v. Doll*, 559 F.3d 1345 (Fed.Cir.2009); *Hawkins v. United States*, 469 F.3d 993 (Fed.Cir.2006); *Patterson v. Department of Interior*, 424 F.3d 1151 (Fed.Cir.2005); and, *Billings v. United States*, 322 F.3d 1328 (Fed.Cir. 2003). These cases were cited by appellants in their opening and/or reply briefs in *Easter II*, for their purported guidance as to how regulations interpreting FLSA should be applied to driving time claims. The Federal Circuit rejected the

arguments that plaintiffs reassert here regarding these cases:

[T]o the extent that the appellants' argument is simply a challenge to the correctness of this court's decisions in *Bobo* and *Adams [II]*, we reject it.

With respect to the appellants' argument that Supreme Court or other Federal Circuit decisions require us to overturn the decisions in *Bobo* and *Adams [II]*, we disagree. To begin with, several of the decisions on which the appellants rely predate *Adams [I]* and thus do not qualify as subsequent authority that would call *Adams [I]* into question. In any event, even without regard to the issue of timing, we do not find in those authorities any persuasive ground for reconsidering *Bobo* and *Adams [II]*.

*Easter II*, 575 F.3d at 1337.

work by the Portal–to–Portal Act as interpreted by our precedent."). On this record, the driving time of these nine groups of plaintiffs is not materially different from the driving time in *Adams II* that was found to be non-compensable under FLSA. For this reason, defendant is entitled to summary judgment on the driving time claims of these nine groups of plaintiffs.

## B. Custom or Practice of Compensability

Plaintiffs argue, notwithstanding the *stare decisis* effect of *Adams II*, that a special circumstance applicable only to the Group Six plaintiffs distinguishes their driving time claims from those decided in *Adams II*. It is important to note that it is not the *physical act* of the driving performed by the Group Six plaintiffs that plaintiffs seek to distinguish as unique and compensable. Rather, plaintiffs attempt to discern a circumstance in the *litigation* of the driving time claims of the Group Six plaintiffs which entitles them to compensability that was not available to the plaintiffs in *Adams II*. Plaintiffs' argument, which endeavors to apply 29 U.S.C. § 254(b)(2) (2006) to their driving time claims, is of no avail.

### 1. Hypothetical Custom or Practice of Compensability Argument Rejected in *Adams II*

Congress amended FLSA by enacting the Portal–to–Portal Act of 1947.[4] 29 U.S.C. §§ 251–262 (2006). This act makes some employee activity at the beginning or end of the workday non-compensable, when it is "preliminary to or postliminary to said [employee's] principal activity or activities." 29 U.S.C. § 254(a)(2). However, a limitation on the Portal–to–Portal Act exception of preliminary and postliminary activities from FLSA-compensable work is found in section 254(b):

(b) Compensability by contract or custom Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to any activity, the employer

shall not be so relieved if such activity is compensable by either—

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

29 U.S.C. § 254(b).

In *Adams I*, the plaintiffs noted that some of their FLSA non-exempt co-workers were paid for their commuting time. Plaintiffs thus reasoned that FLSA compensability for the *Adams I* plaintiffs' commutes was established under 29 U.S.C. § 254(b)(2), because a custom or practice of compensating commuting time existed at their federal agencies. The court disagreed, because there was no indication that such a custom or practice actually benefitted the *Adams I* plaintiffs, who were considered FLSA-exempt employees by their agencies. *Adams I*, 65 Fed.Cl. at 230.

Some of the *Adams I* plaintiffs were subject to a settlement agreement which stipulated that these plaintiffs were FLSA non-exempt at the times relevant to their driving time claims. 65 Fed.Cl. at 232–33. The court noted that the stipulation did "not help plaintiffs to show that there was a custom or practice of compensating these plaintiffs for their commuting time, because the undisputed fact is that, to the extent that agencies ever followed a practice of compensating agents for home-to-work driving ..., this practice never extended to agents who were, rightly or wrongly, *classified* as exempt from the FLSA [at the time]." *Id.* (internal quotations and citation omitted). The Federal Circuit agreed with this analysis, stating that:

Prior to this litigation, ... the plaintiffs and other officers in the positions and

4. A more complete description of statutory provisions governing the FLSA compensability or non- compensability of commuting time is given in *Adams I*. See 65 Fed.Cl. at 221–26.

grades at issue were classified as *exempt* from FLSA and were therefore not paid for their commutes. That exemption status has been changed by the settlement agreement, in which the government stipulated for the purpose of this case that the plaintiffs were non-exempt. Plaintiffs seize on this provision of the settlement to argue that, had the government not wrongly classified them as exempt, it would have [paid for their commutes] and thus a "custom or practice" of compensation would have existed. However, hypothetical customs or practices do not suffice. In reality, the government did not compensate the plaintiffs for their commuting time; the plaintiffs cannot now rely on the settlement to rewrite history.

*Adams II*, 471 F.3d at 1327.

### 2. Hypothetical Custom or Practice Argument Must Also Be Rejected Here

■ Plaintiffs argue that the Federal Circuit's refusal to apply 29 U.S.C. § 254(b)(2) to the driving time claims at issue in *Adams II* should be limited to circumstances where plaintiffs attempt to establish a hypothetical custom or practice of compensating commuting time through the application of a settlement agreement stipulation. Pls.' Opp. at 9. Plaintiffs suggest that there is a qualitative difference between a hypothetical custom or practice established by a stipulation in a settlement agreement regarding the FLSA non-exempt status of employees, and a hypothetical custom or practice established by a judgment determining the FLSA non-exempt status of employees. Pls.' Mot. at 24. The court disagrees. The statutory exception to the Portal–to–Portal Act applies only when a custom or practice of compensating an employee's activity was "in effect" for the employee in question. 29 U.S.C. § 254(b)(2). Hypothetical customs or practices, whether alleged to have been created by stipulation or a court's judgment, were never "in effect" here and cannot create FLSA liability under 29 U.S.C. § 254(b)(2).

There is no other reasonable interpretation of the holding in *Adams II* with regard to this issue. The Federal Circuit reasoned that a custom or practice that would have existed under changed circumstances was not enough to create FLSA liability under 29 U.S.C. § 254(b)(2), because "hypothetical customs or practices do not suffice." *Adams II*, 471 F.3d at 1327. Customs or practices are established by actual occurrence and may not be written into history by the terms of a settlement agreement. *Id.* This court is bound by the precedential analysis of 29 U.S.C. § 254(b)(2) provided by the Federal Circuit in *Adams II*. *See Crowley v. United States*, 398 F.3d 1329, 1335 (Fed.Cir.2005) (rejecting this court's reliance on a *de novo* interpretation of a statute when binding precedent in this circuit governed the interpretation of that statute). The court finds no distinction between history rewritten by a court, or history rewritten by the binding settlement agreement of two parties to a lawsuit—such rewritten histories can only create hypothetical customs or practices, which do not suffice to create FLSA liability under 29 U.S.C. § 254(b)(2). *Adams II*, 471 F.3d at 1327. Because no custom or practice of compensating the commuting time of the GS–13 criminal investigators at BATF, DEA, IRS, USCS or USSS existed in the real and historical past under review here, the driving time claims of the Group Six plaintiffs identified in defendant's motion are not supported by 29 U.S.C. § 254(b)(2).

### CONCLUSION

Plaintiffs bore the burden of showing that their commuting time was compensable work under FLSA. *Adams II*, 471 F.3d at 1326. As is abundantly clear from numerous decisions of this court and the Federal Circuit, the driving time claims currently before the court are without merit. Because no genuine issue of material fact prevents the entry of judgment for defendant on these claims, defendant's motion is granted and plaintiffs' motion is denied.

For these reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion for Summary Judgment Regarding Remaining Driving Time Claims, filed April 11, 2008, is **GRANTED**;

(2) Plaintiffs' Cross–Motion for Partial Summary Judgment Regarding the "Driving

Time" Issue, filed June 30, 2009, is **DENIED**;

(3) Pursuant to RCFC 54(b), insofar as there is no just reason for delay,[5] the Clerk's Office is directed to **ENTER** judgment for defendant as to the driving time claims of the plaintiffs identified in defendant's motion, and to **DISMISS** these claims, with prejudice;

(4) Each party shall bear its own costs.

---

**5.** In light of the large number of plaintiffs and claims in these consolidated cases, a final and expeditious resolution of these plaintiffs' driving time claims promotes judicial economy and should aid in conserving the resources of the parties.